722 F.2d 1423
 ARIZONA PAST AND FUTURE FOUNDATION, INC., a non-profit
Arizona corporation; Laurie Blank-Roper; William Arthur,
Jr.; G.G. George; Richard B. Barlow; and Benjamin and
Margaret Hammer, Plaintiffs-Appellants,
v.
Drew LEWIS*, Secretary of the United States
Department of Transportation; Ray Barnhart, Administrator
of the Federal Highway Administration of the United States
Department of Transportation; Robert Young, Regional
Administrator of the Federal Highway Administration of the
United States Department of Transportation; Thomas O.
Willett, Arizona Division Administrator of the Federal
Highway Administration of the United States Department of
Transportation; William A. Ordway, Director of the Arizona
Department of Transportation, Defendants-Appellees.
 No. 82-6062.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 15, 1983.
Decided Oct. 11, 1983.
As Amended Dec. 22, 1983.
 
 Paul V. Bonn, Phoenix, Ariz., for plaintiffs-appellants.
 Kathryn A. Oberly, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before DUNIWAY, CHOY, and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Arizona Past and Future Foundation Inc. (the Foundation) appeals from the final judgment dismissing its action seeking declarative and injunctive relief. The Foundation objects to the choice of the West Papago Alternative (Alternative Seven) as the means of completing Interstate 10, and brings this action to block construction. The Foundation challenges the Secretary of Transportation's [Secretary] decision as arbitrary, capricious, and an abuse of discretion as well as violative of section 4(f) of the Department of Transportation Act of 1966 (the Act), 49 U.S.C. Sec. 1653(f) (section 4(f)).[1]
 
 
 2
 The Secretary has determined, pursuant to Section 4(f), that there is no feasible and prudent alternative to the use of two significant archeological sites that will be adversely affected by construction of Alternative Seven, and that all steps have been taken to minimize harm to these sites. The Foundation contends, however, that the Secretary has not complied with section 4(f) because: (1) there are feasible and prudent alternatives to the use of the archeological sites; and (2) the Secretary improperly found that no historic sites would be used in construction of Alternative Seven.
 
 
 3
 The district court found that although some archeological sites would be used in construction of Alternative Seven, no historic sites would be used. The district court also found that there were no feasible and prudent alternatives to such use because none of the other alternatives would effectively reduce traffic congestion within the city's central corridor. The district court then approved the proposed data recovery program for the archeological sites as meeting section 4(f)'s requirement of mitigation of harm.[2] The district court concluded that the Secretary's decision approving construction of Alternative Seven was not "arbitrary, capricious or otherwise unlawful." We agree.
 
 I. Standard of Review
 
 4
 Agency action must be set aside by the reviewing court if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", or if the action violates statutory, procedural, or constitutional requirements. 5 U.S.C. Sec. 706(2)(A), (B), (C), (D);[3] see Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). In Overton Park, as here, plaintiffs challenged a route chosen by the Secretary for construction of an Interstate Highway. The Supreme Court held that in evaluating the Secretary's choice, the reviewing court must make three inquiries.
 
 
 5
 First, the reviewing court must determine whether the Secretary acted within the scope of his authority and whether his decision was reasonably based on the facts contained in the administrative record. Second, the reviewing court must determine whether the Secretary's decision was arbitrary, capricious or an abuse of discretion because he failed to consider all relevant factors or made a clear error of judgment. Third, the reviewing court should decide whether the Secretary complied with the applicable procedural requirements. See Overton Park, 401 U.S. at 415-417, 91 S.Ct. at 823-824; Adler v. Lewis, 675 F.2d 1085, 1091 (9th Cir.1982).[4]
 
 
 6
 In reviewing the district court's decision upholding the agency's choice of Alternative Seven, this court applies the same standard applied by the district court, the Overton Park standard described above. See Southeast Alaska Conservation Council v. Watson, 697 F.2d 1305, 1312 (9th Cir.1983). This court does not defer to the findings of the district court that the Secretary's decision was reasonable and did not constitute an abuse of discretion, the district court, which is also limited to review of the administrative record,[5] is in no better position to review agency action than is the Court of Appeals. See Asarco, Inc. v. United States Environmental Protection Agency, 616 F.2d 1153, 1161 (9th Cir.1980); Washington State Farm Bureau v. Marshall, 625 F.2d 296, 306 (9th Cir.1980). Therefore, based upon a thorough, probing and in-depth review of the administrative record, we hold that the Secretary did not abuse his discretion but reasonably found that there are no feasible and prudent alternatives to construction of Alternative Seven and that no historic sites will be used in such construction. See, e.g., Adler v. Lewis, 675 F.2d 1085, 1092-95 (9th Cir.1982).
 
 II. Facts
 
 7
 Interstate 10 (I-10) is a primary east-west route linking Phoenix with major metropolitan areas throughout the country. I-10 is complete in Arizona with the exception of a 15-mile segment.
 
 
 8
 In 1975, a majority of Phoenix voters approved a referendum requiring the city to support the West Papago highway proposal as a means of completing I-10. The United States Department of Transportation (DOT) included the West Papago proposal as one of the possible routes to be evaluated in the combined environmental impact and section 4(f) statement (FEIS/(4) Statement).[6] The DOT maintains that the overall purpose of the highway project is to close the gap in I-10 and to provide improved traffic service for central Phoenix.
 
 
 9
 Section 4(f) of the Act declares a national policy favoring preservation of historic sites and parkland. Section 4(f) provides in part that:
 
 
 10
 [T]he Secretary shall not approve any program or project which requires the use of ... any land from an historic site of national, State, or local significance as so determined by the [Federal, State, or local officials having jurisdiction thereof] ... unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such ... historic site resulting from such use.
 
 
 11
 49 U.S.C. Sec. 1653(f) (1976).
 
 
 12
 A number of properties involving public parks, recreation areas and historic sites were investigated in the vicinity of the proposed I-10 project to determine whether 4(f) was applicable. As a result of this investigation it was determined that the I-10 freeway would use the eastern portion of Berney Park. The DOT's FEIS/4(f) Statement concluded that there was no feasible and prudent alternative to the use of Berney Park. That conclusion is not at issue in this litigation.
 
 
 13
 The FEIS/4(f) Statement, however, called for additional archeological testing and investigation regarding possible use of three archeological sites, La Cuidad, Las Colinas and Los Aumentos[7], to determine whether the significance of the sites consisted of archeological data and artifacts that could be preserved by removal or if the sites contained structures that warranted preservation in place. 23 C.F.R. Sec. 771.135(f)(1).[8]
 
 
 14
 On October 2, 1978, the Secretary approved the West Papago proposal conditioned upon the completion of the archeological testing and investigation. In accordance with section 4(f), the Arizona Historic Preservation Officer and the Advisory Council on Historic Preservation concurred.
 
 
 15
 Pursuant to the Secretary's conditional approval, the State Historic Preservation Office hired two archeological testing organizations, the State Museum of Arizona and the Museum of Northern Arizona, to conduct the testing. These organizations concluded that preservation in place was not required, and that a date recovery program would be imposed to remove and preserve archeological information.[9] The Secretary's conditions were met, clearing the way for final approval.
 
 
 16
 Due to the scope of the sites and the large quantity of material contained therein, the DOT prepared a supplemental 4(f) evaluation. The West Papago alternative was reconsidered in light of the information provided by the archeological testing. Factual data forming the basis for the original 1978 decision were also reconsidered.
 
 
 17
 After public comments on the supplemental 4(f) draft evaluation, the DOT released a final supplemental 4(f) evaluation on February 26, 1982. Accompanying this evaluation was the Secretary's final determination that there is no feasible and prudent alternative to the West Papago alternative and that all possible planning to minimize harm to the archeological sites contained therein has been undertaken.
 
 III. Issues on Appeal
 
 18
 The Foundation raises several questions pertaining to the Secretary's compliance with Department of Transportation Act of 1966 Sec. 4(f), 49 U.S.C. Sec. 1653(f) (1976). The issues on appeal are:
 
 
 19
 (1) Whether the Secretary acted properly in concluding that there were no feasible and prudent alternatives to the West Papago proposal?
 
 
 20
 (2) Whether the Secretary acted properly in concluding that only Las Colinas and La Cuidad and no historic buildings will be "used" within the meaning of section 4(f) in the construction of the West Papago alternative?
 
 
 21
 (3) Whether the district judge acted properly in refusing to recuse himself for personal bias or prejudice pursuant to 28 U.S.C. Sec. 144?
 
 IV. Analysis
 A. Feasible and Prudent Alternatives
 
 22
 The Foundation argues that the Secretary violated section 4(f) in choosing Alternative Seven because there are feasible and prudent alternatives to that route that are less costly, less destructive and do not affect section 4(f) land.
 
 
 23
 The combined FEIS/4(f) Statement considered six alternatives to the West Papago route. All of the proposed routes were considered feasible, but only the West Papago alternative was considered prudent and feasible. The FEIS/4(f) Statement determined that only the West Papago alternative would achieve the dual goals of the project: (1) to close the gap in I-10, and (2) to provide improved traffic service for central Phoenix.
 
 
 24
 The Foundation contends that the administrative record does not disclose the existence of a dual purpose. Specifically, the Foundation alleges that improved traffic service for central Phoenix was not a primary purpose. The Foundation asserts that the DOT's reference to a two-fold purpose is merely a post hoc rationale aimed at justifying the DOT's selection of the West Papago alternative.
 
 
 25
 The administrative record before us supports the conclusion that improved traffic service for central Phoenix was a stated purpose and an integral part of the highway project. The combined FEIS/4(f) Statement concluded that the West Papago alternative "would provide better transportation service in a corridor of high demand, thereby reducing congestion on the major street system."[10]
 
 
 26
 The record contains several specific instances in which traffic service is mentioned as an integral purpose of the highway project. In order to consider and balance the environmental factors involved in the construction of the project, the Secretary authorized an exhaustive traffic service study of all the proposed alternatives which concluded that "Alternative 7 would provide acceptable traffic service. None of the other alternatives would provide an adequate level of service." See FEIS/4(f) Statement, Vol. II, pp. 3-15.
 
 
 27
 Although the Foundation questions certain data and conclusions relied upon in the preparation of the FEIS/4(f) traffic service survey, we note "that disagreement among experts will not serve to invalidate an EIS." Life of the Land v. Brinegar, 485 F.2d 460, 472 (9th Cir.1973).
 
 
 28
 The Secretary's "Decision Document" of October 2, 1978, further belies the Foundation's position. The Secretary stated:
 
 
 29
 The West Papago Inner-Loop will close the gap in I-10 and is an integral part of broader city-wide development planning and the regional transportation plan. The long-range transportation needs of the Phoenix area will be best met by a highway-transit facility in the West Papago Inner Loop corridor because it serves the downtown area and provides direct cross-town access to Sky Harbor Airport. Although the Durango alternative [Alternative 2] would close the I-10 gap, it would not relieve projected congestion on city streets or provide as ready access to the central business district or to the expanded airport facility currently under construction.[11]
 
 
 30
 In the alternative, the Foundation argues that assuming traffic relief was a purpose of the project, the Durango route was never properly considered. The administrative record, however, clearly establishes that the Durango route [Alternative 2] was thoroughly evaluated in light of the project's dual purpose. The combined FEIS/4(f) Statement and the Secretary's "Decision Document" specify that although Alternative 2 would close the gap in I-10 it would not provide an adequate level of traffic service.[12] Furthermore, in explaining why Alternative 2 was not considered to be prudent, the FEIS/4(f) Statement provides that "[a]lthough all the Alternative 2 combinations were technically feasible, none were considered prudent because they did not provide the necessary transportation service and relief of traffic congestion in central Phoenix." FEIS/4(f) Statement Vol. III pp. 3-16, 17.
 
 
 31
 The evidence presented reveals that only the West Papago alternative fulfills the dual purpose satisfactorily. Alternatives that do not accomplish the purposes of the project may properly be rejected as imprudent. See, e.g., Adler v. Lewis, 675 at 1094; Monroe County Conservation Council, Inc. v. Adams, 566 F.2d 419, 424 (2d Cir.1977).
 
 
 32
 We are satisfied that the FEIS/4(f) Statement reflects a reasonably comprehensive selection of alternatives, made in good faith. In reviewing an FEIS/4(f) Statement, we are not empowered to substitute our judgment for that of the Secretary. Overton Park, 401 U.S. at 416, 91 S.Ct. at 823. Adler v. Lewis, 675 F.2d at 1094. We are persuaded that the Secretary properly considered the relevant factors and reasonably found that there were no feasible or prudent alternatives to the West Papago Alternative. Therefore, the Secretary's decision was not arbitrary, capricious or an abuse of discretion.
 
 
 33
 The Foundation also contends that both Las Colinas and La Cuidad contain structures that warrant preservation in place and that the data recovery program will be insufficient to protect these sites. The Secretary, however, has fully complied with section 4(f) regarding the archeological sites. As discussed above, the Secretary properly found that there were no feasible and prudent alternatives to use of these sites. The Secretary then proposed an excavation and data recovery program designed to preserve the archeological information contained in the sites for the benefit of the public. The Foundation suggests no further protective measures that would minimize harm to the sites consistent with construction of Alternative Seven.
 
 B. Use of Historic Sites
 
 34
 The Foundation argues that the Secretary erred in failing to find that certain historic sites, which will suffer adverse effects from construction of Alternative Seven, will be used pursuant to section 4(f). Because the Secretary did not recognize that these sites would be used, the Foundation claims that the Secretary violated section 4(f) by failing to avoid the use or to minimize harm to the sites.
 
 
 35
 Section 4(f) by its own terms protects historic sites of local, state or national significance. In order to invoke the protections of 4(f), an historic site must meet the criteria of eligibility for inclusion in the National Register of Historic Places. 23 C.F.R. Sec. 771.135(d). Historic sites or structures eligible for inclusion in the National Register are subject to 4(f) protection only when they will be or used in the construction of the freeway project. 49 U.S.C. Sec. 1653(f) (1976).
 
 
 36
 This Circuit has held that the term "use" is to be construed broadly, without limitation to the concept of a physical taking, and including areas adversely affected by the project. Adler v. Lewis, 675 F.2d at 1092, Stop H-3 Association v. Coleman, 533 F.2d 434, 445 (9th Cir.1976). Because the FEIS/4(f) Statement was used as a basis for the Secretary's decision that the historic sites would not be used, we examine the FEIS/4(f) Statement to determine if consideration was given according to section 4(f) mandates. Adler v. Lewis, 675 F.2d at 1093.
 
 
 37
 The Secretary evaluated six public parks and recreation areas and 59 sites of possible historic significance in compiling the original FEIS/4(f) Statement. Preliminary evaluations disclosed that only eleven sites were eligible for inclusion in the National Register of Historic Places. The eleven sites were then analyzed to determine whether the West Papago alternative would "use" land either by direct acquisition or through proximity impacts affecting the use of the land. The analysis indicated no such "use".[13]
 
 
 38
 The State Historic Preservation Office and the Advisory Council on Historic Preservation concurred with the above analysis. The Foundation offered no evidence of insufficient consideration by the Secretary to the problems of "use".
 
 
 39
 Our review of the administrative record discloses that all historic sites considered were thoroughly investigated during this lengthy process, and were treated extensively in the combined FEIS/4(f) Statement. We find that the Secretary examined the relevant factors and could reasonably have believed that no historic sites would be adversely affected by the West Papago route.[14] Therefore, the Secretary's decision is not arbitrary, capricious or otherwise unlawful.
 
 C. Bias or Prejudice
 
 40
 The Foundation contends that it was denied the constitutional guarantee of a fair and impartial tribunal when the district judge made certain comments regarding the disputed historic sites during trial. The Foundation submitted an affidavit of bias and prejudice, pursuant to 28 U.S.C. Sec. 144, asserting that the extrajudicial observations indicated prejudgment by the district judge of its request for a preliminary injunction. It is our view that the district judge's conduct fails to show bias or prejudice under section 144.
 
 
 41
 28 U.S.C. Sec. 144 provides in part: Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 
 
 42
 "The law is clear that [the judge] must determine whether the affidavit is sufficient, if true, to require that he recuse himself. Only if he finds it thus sufficient is he required to have another judge hear the motion." United States v. Olander, 584 F.2d 876, 883 (9th Cir.1978), vacated and remanded on other grounds sub nom., Harrington v. United States, 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979); United States v. Azhocar, 581 F.2d 735, 738 (9th Cir.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).
 
 
 43
 District Court Judge Walter E. Craig found the Foundation's affidavit of bias and prejudice to be sufficient on its face.[15] The matter was transferred to Chief District Judge Muecke for determination. Judge Muecke denied the motion for recusal and concluded that Judge Craig's remarks did not indicate prejudgment of the issues. Judge Craig's comments were limited to an awareness of the location, use, and estimated age of particular buildings and were not a basis for evidentiary rulings.[16]
 
 
 44
 A district judge's refusal to disqualify the sitting judge under 28 U.S.C. Sec. 144 may only be reversed for an abuse of discretion. United States v. Sibla, 624 F.2d 864, 868 (9th Cir.1980). These facts do not disclose an abuse of discretion.
 
 V. CONCLUSION
 
 45
 The Secretary did not violate section 4(f) in approving the West Papago Alternative as a means of completing I-10 and improving traffic service in Central Phoenix. His determination that there are no feasible and prudent alternatives to the West Papago Alternative is not arbitrary, capricious or an abuse of discretion but is a reasonable finding based upon a consideration of all relevant factors. Likewise, the Secretary properly determined that no historic sites would be used in construction of the West Papago Alternative.
 
 
 46
 The evidence failed to show that Judge Craig was biased. Denial of the Foundation's recusal motion does not constitute an abuse of discretion.
 
 
 47
 AFFIRMED.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), we substitute the name Elizabeth H. Dole, successor to Drew Lewis and the original appellee, Brock Adams, as the Secretary of the United States Department of Transportation
 
 
 [1]
 Section 4(f) provides in pertinent part:
 After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, state, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative (emphasis added) to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.
 
 
 [2]
 We note that section 4(f) was recodified. As provided by Section 1(b) of Pub.L. No. 97-449, 96 Stat. 2419, what was formerly Section 4(f) of the Department of Transportation Act 49 U.S.C. Sec. 1653(f), is now codified at 49 U.S.C. Sec. 303. Although the new statute is worded in slightly different fashion than the old Section 4(f), Congress did not intend to effect any substantive change. See Pub.L. No. 97-449, Sec. 1(a), 96 Stat. 2413
 
 
 [3]
 The Department of Transportation Act makes the Administrative Procedure Act applicable to proceedings of the Department of Transportation. 49 U.S.C. Sec. 1655(h) (1964 ed. Supp. V.)
 
 
 [4]
 The Foundation does not challenge the Secretary's decision on the ground of procedural error
 
 
 [5]
 In determining whether an agency decision is arbitrary, capricious, or an abuse of discretion, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The district court may, however, receive additional evidence, as necessary, to explain the agency's decision. Id. at 142-43, 93 S.Ct. at 1244; Asarco, Inc. v. United States Environmental Protection Agency, 616 F.2d 1153, 1160 (9th Cir.1980). In this case the Foundation does not challenge the district court's decision to receive evidence in addition to the administrative record
 
 
 [6]
 The Secretary of Transportation's own procedures contemplate the preparation of combined "environmental impact/section 4(f)" Statements. See Department of Transportation, Federal Highway Administration, Policy and Procedure Memorandum 90-1, reproduced at 23 C.F.R. Secs. 15-26 (1974). A section 4(f) Statement is required under the Act because the West Papago route would involve the use of land from a small park and from three archeological areas: Las Colinas, La Cuidad and Los Aumentos
 
 
 [7]
 Data recovery at the Los Aumentos site has been completed and that site is not at issue in this litigation
 
 
 [8]
 23 C.F.R. Sec. 771.135(f)(1) provides in part:
 Section 4(f) applies to all archeological sites on or eligible for inclusion on the National Register, including those discovered during construction, unless the Administration, after consultation with the State Historic Preservation Officer and Advisory Council on Historic Preservation, determines that the archeological resource is important chiefly for the information it contains and has minimal value for preservation in place.
 
 
 [9]
 Once it is determined that archeological resources do not warrant preservation in place, 23 C.F.R. Sec. 771.135 permits the development of a resource recovery plan. We note that on October 29, 1981, a memorandum of agreement setting forth an extensive recovery and mitigation plan was entered into by the President's Advisory Council on Historic Preservation, the Arizona State Historic Preservation Office, the DOT and the Arizona Department of Transportation
 
 
 [10]
 See FEIS, Vol. I in Section 5.0, "Description of the Alternatives" and the section 4(f) Statement in Section 3.0 "I-10 Alternatives Considered Not Prudent."
 
 
 [11]
 See former Secretary Adams' 1978 Decision Document, reprinted in the Addendum to Appellant's Opening Brief
 
 
 [12]
 FEIS/4(f) Statement, Vol. II, pg. 3-15, Vol. III, pp. 3-8, 3-16, 17 and Secretary Adams' "Decision Document" of October 2, 1978
 
 
 [13]
 This analysis included consideration of such factors as noise and air quality levels, and visual impacts
 
 
 [14]
 In his "Decision Document" the Secretary specifically states that:
 In making my decision on Interstate 10 in Phoenix, I have before me the EIS, including the submission pursuant to section 4(f), and other elements of the administrative record.... I have met with representatives of organizations opposed to the project in the Went Papago-Inner Loop corridor. I have received written views from interested citizens and organizations, expressing both support for and opposition to the proposal.
 
 
 [15]
 See Order of July 7, 1982, CR 135
 
 
 [16]
 See District Judge Muecke's order denying foundation's motion for recusal, CR 141. Judge Muecke noted that there were numerous discrepancies between Judge Craig's comments as transcribed in the official transcript and the Foundation's description of those comments. Id. at pp. 447-62