**ALASKA CENTER FOR THE ENVIRONMENT; Alaska Wilderness Recreation and Tourism Association; Alaska Wildlife Alliance; and Trustees For Alaska, Plaintiffs–Appellants,**

v.

**Carl S. ARMBRISTER, Director, Office of Planning and Program; Federal Highway Administration; Phil Janik, Regional Forester, Alaska Region, U.S. Forest Service; U.S. Forest Service, Defendants–Appellees,**

**Alaska Visitors Association; Chugach Alaska Corporation; City of Whittier; Alaska State District Council of Laborers; State of Alaska; Prince William Sound Economic Development Council, Inc., Defendant–Intervenors– Appellees.**

**No. 97–35503.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1997.

Decided Sept. 2, 1997.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Dec. 15, 1997.*

* Judge Thompson has voted to reject the suggestion for rehearing en banc, and Judges Wallace

Patrick D. Lavin, Anchorage, Alaska, for the appellants.

Albert M. Ferlo, Jr., Assistant Attorney General, Washington, DC, for the defendant-appellees.

John L. Steiner and James E. Cantor, Assistant Attorneys General, Anchorage, Alaska, for the appellee State of Alaska.

Frederick H. Boness, Anchorage, Alaska, for the intervenor-appellee City of Whittier.

Philip Blumstein, Anchorage, Alaska, for the intervenor-appellee Chugach Alaska Corporation.

Susan A. Burke, Juneau, Alaska, for the intervenor-appellee Alaska Vistors Association.

and Noonan recommend that suggestion be re- jected.

Before: WALLACE, NOONAN and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

## OVERVIEW

Alaska Center for the Environment and several other organizations (referred to collectively as "ACE") challenge the decision to construct and fund a road from Portage to Whittier, Alaska. Pursuant to a joint state-federal transportation project, the Federal Highway Administration (FHWA) approved the construction of the road and agreed to provide funding for the construction. ACE contends that, in reaching this decision, the FHWA violated section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303(c), 23 U.S.C. § 138; and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370d.

The district court granted the FHWA's summary judgment motion. ACE now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

Whittier has a population of approximately 250 full-time residents. There is currently no road access into Whittier. Whittier is separated from the state highway system and the community of Portage by approximately twelve miles of undeveloped land. The Alaska Railroad provides the only ground transportation to Whittier. All parties agree the current rail system is inadequate to satisfy the demand for access into Whittier.

Since 1946, various entities have studied the need for improved access into Whittier. These studies eventually led to the Whittier Access Project. This project is an endeavor of the Alaska Department of Transportation (ADOT), undertaken with the support of the FHWA. The FHWA approved the Whittier Access Project and agreed to provide funding for the Project.

In 1995, the ADOT and the FHWA published their combined final environmental impact statement (EIS) and draft section 4(f) evaluation for the Whittier Access Project.

The final EIS considered four alternatives for improving access into Whittier. Alternative 1 is a no action alternative. Alternative 2 proposed improving the existing rail service from Portage to Whittier by increasing the number of trains and building a parallel section of track to allow two trains to operate simultaneously. Alternative 3 proposed building a new two-lane road from Portage to Whittier and using an existing rail service tunnel, for a portion of the new road, as a one-way road. Under this alternative, rail service would continue only for freight. The fourth alternative proposed building the same road as identified in alternative 3 but with a wider shoulder through the existing tunnel, allowing cars to travel in both directions.

The final EIS identified alternative 3 as the preferred alternative. In 1996, the Director of the Office of Planning and Program Development for Region 10 of the FHWA signed the Record of Decision (ROD), selecting alternative 3 for implementation. The ROD discussed the various alternatives and concluded that "only Alternatives 3 and 4, the road options, adequately meet the purposes of and the need for the project."

ACE then brought this action, challenging the decision to build and fund the road. The district court denied ACE's request for a preliminary injunction and granted the FHWA's summary judgment motion. We granted an injunction pending appeal and ordered expedited briefing on the merits. After oral argument, we issued an order dissolving the injunction. We now affirm the district court's grant of summary judgment.

## DISCUSSION

ACE contends the decision to construct and fund the road violates section 4(f) because improving the existing rail system is a feasible and prudent alternative to constructing the road. ACE also contends the EIS violated the NEPA because it did not adequately discuss the safety hazards inherent in the use of a road for access into Whittier.

### A. Section 4(f)

Construction of the road will use 5.7 acres of the 1,790 acres of the Portage Glaci-

er Recreation Area (approximately 0.3% of the area) and 29.4 acres of the 720 acres of the Portage Lake Recreation Area (approximately 3.3% of the area). These Recreation Areas are federal recreation areas protected under Section 4(f) of the Department of Transportation Act. Section 4(f) prohibits "the use of publicly owned land of a public park [or] recreation area" unless the FHWA determines "there is no prudent and feasible alternative to using that land...." 49 U.S.C. § 303(c); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 405, 91 S.Ct. 814, 817–18, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The FHWA determined the improved rail system is not a prudent alternative because that alternative would not meet the stated purpose and need for the Whittier Access Project. We may set aside this decision only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Arizona Past and Future Found., Inc. v. Lewis*, 722 F.2d 1423, 1425 (9th Cir.1983).

The administrative record indicates the purpose of the Whittier Access Project is to meet the following goals:

provide acceptable access for Whittier residents and business people, contribute to the state economy, provide transportation costs that are comparable with other nearby Alaska communities ..., and provide better access for emergency services.

The State of Alaska emphasizes that the "essence" of the project is to meet the projected demand for access into Whittier.

The FHWA concluded that, while enough rail capacity could be provided to meet the total demand, the trains would actually carry relatively few passengers due to the lesser demand for access by rail. The FHWA relied on several studies in support of this conclusion. One study states that, in 1997, the rail service can provide access to Whittier for 615 people per hour, but, assuming a road were available, the demand for access would be 1,310 people per hour. On an annual basis, the demand for rail service is 91,000, but the demand for access by road is 897,000. The study further states that, in the year 2015, the corridor demand of persons per hour will be 2,083 people, but the capacity of the improved rail service alternative would be 580 people or possibly 1,048 people if people are allowed to ride in cars attached to flatcars.

Beyond the inability to meet the demand for access, the FHWA provided information demonstrating the rail system will not provide improved access for emergency services. Also, the FHWA determined there were significant safety concerns with providing an improved rail shuttle service. The record demonstrates that the current track and tunnel configuration allows unsafe ice buildup, compromised track structure, and dangerous rock instability. The northwest entrance to one of the tunnels is prone to avalanches and the FHWA concluded this safety risk would be increased under the improved rail service alternative because of the increased frequency of service and greater train length.

The FHWA thoroughly considered the relevant factors and alternatives and reasonably determined the improved rail system is not a prudent alternative. *See Arizona Past and Future*, 722 F.2d at 1429. "Alternatives that do not accomplish the purposes of the project may properly be rejected as imprudent." *Id.* at 1428. Although ACE strenuously sets forth its belief that an improved rail system is a preferable and more prudent alternative, we may not substitute our judgment for that of the FHWA. *Id.*

■ ACE, however, further argues that to comply with section 4(f), the FHWA must identify "unique problems or truly unusual factors" relating to the rejected rail alternative. For this argument, ACE relies on our decision in *Stop H–3 Ass'n v. Dole*, 740 F.2d 1442 (9th Cir.1984).

ACE's reliance on *Stop H–3* is misplaced. In *Stop H–3*, we assumed the rejected alternatives met the stated purpose of the project. Consistent with *Overton Park*, we concluded that, if a rejected alternative would satisfy the purpose of the project without using land covered by section 4(f), an agency cannot reject those alternatives based on increased costs or community disruption unless the

costs and disruption are of "extraordinary magnitudes." *Stop H–3,* 740 F.2d at 1449–55.

In the present case, the FHWA rejected the rail system alternative because it did not satisfy the purpose of the project—to meet the demand for access into Whittier. In this circumstance, the FHWA is not required to make a further showing of "unique problems" or "truly unusual factors" associated with the rail alternative. *Arizona Past and Future,* 722 F.2d at 1428. The FHWA did not act arbitrarily, capriciously, or abuse its discretion by rejecting an alternative which would not satisfy the purpose of the project. *See id.* at 1428–29.

## B. NEPA

■ ACE next argues the final EIS violated the NEPA because it failed to adequately discuss the safety concerns associated with the road and rail system alternatives. An EIS must "reasonably set forth sufficient information to enable the decisionmaker to consider the environmental factors and make a reasoned decision." *Oregon Envtl. Council v. Kunzman,* 817 F.2d 484, 493 (9th Cir.1987) (quotations and citations omitted).

The record does not support ACE's argument. The final EIS thoroughly examined the relative safety risks associated with the road and rail system alternatives. The final EIS also specified the measures that will be taken to lessen the safety risks associated with the road. The final EIS did not fail to provide sufficient data regarding safety concerns.

■ ACE also argues the FHWA violated the NEPA because the FHWA defined the purpose of the project too narrowly. Contrary to ACE's argument, the purpose of the project is not defined so narrowly as to disqualify all alternatives except the road alternatives. The purpose of the project is to meet the demand for access into Whittier. This is a reasonable purpose. *See City of Carmel–by–the–Sea v. United States Dep't of Transp.,* 123 F.3d 1142, 1155–57 (9th Cir. 1997); *Citizens Against Burlington v. Busey,* 938 F.2d 190, 196 (D.C.Cir.1991).

The FHWA also thoroughly considered the improved rail system alternative, but determined the rail system would not meet the total demand for access. *See Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1519 (9th Cir.1992) ("Once satisfied that a proposing agency has taken a 'hard look' at a decision's environmental consequences, the review is at an end."). The FHWA's definition of the project's purpose and analysis of the alternatives did not violate the NEPA. *See City of Carmel,* 123 F.3d at 1155–57.

AFFIRMED.