**OREGON PORTLAND CEMENT COMPANY, a Nevada corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR; James G. Watt, Secretary of the Interior; Bureau of Land Management; Robert F. Burford, Director of Bureau of Land Management, Defendants.**

**No. A82–510 CIV.**

United States District Court, D. Alaska.

April 19, 1984.

---

Richard E. McCann, Perkins, Coie, Stone, Olsen & Williams, Anchorage, Alaska, for plaintiff.

Michael R. Spaan, U.S. Atty., Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment. The basis of this action is a complaint for review, under the Administrative Procedure Act, of a decision by the Interior Board of Land Appeals (IBLA). In that decision, the IBLA affirmed a decision of the Alaska State Office, Bureau of Land Management, declaring certain of plaintiff's placer mining claims abandoned and void. *See Oregon Portland Cement Co.,* 66 IBLA 204 (1982). Since the facts of this case are undisputed, it is ripe for summary judgment.

The issue in this case is whether the IBLA and the Bureau of Land Management (BLM) correctly interpreted and applied Section 314 of the Federal Land Policy and Management Act of 1976 (hereinafter FLPMA), 43 U.S.C. § 1744 (1976). Section 314 of FLPMA required owners of unpatented lode or placer mining claims to file information relating to those claims with the BLM. The purposes of this filing include (1) ridding federal lands of stale mining claims, and (2) assuring that federal land managers have ready access to current information on active claims. *See Topaz Beryllium Co. v. United States,* 479 F.Supp. 309, 313 (D.Utah 1979) (quoting

S.Rep. No. 94–583, 94th Cong., 2d Sess. 64–65 (1975)), *aff'd* 649 F.2d 775 (10th Cir. 1981).[1] For owners of unpatented placer mining claims located prior to the passage of FLPMA (Oct. 21, 1976) Section 314 required, first, that owners file certain "locating" information with BLM once prior to October 21, 1979, *see* 43 U.S.C. § 1744(b), and, second, that owners file either an affidavit of assessment work or a notice of intention to hold prior to October 21, 1979 and prior to each December 31 thereafter. *See id.* § 1744(a). This second group of reports must be filed with both BLM and the official state recording office (generally the county public land records). Under Section 314, an owner who fails to meet the above filing requirement is deemed conclusively to have abandoned his or her claim. *Id.* § 1744(c).

### I. *Factual Background*

The claims at issue are 40 unpatented limestone placer mining claims at View Cove on Dall Island in the Alexander Archipelago of Southeastern Alaska. Oregon Portland Cement Co. (OPCC) originally located and recorded these claims in 1965. After the passage of FLPMA, in June 1978, OPCC filed copies of its official Ketchikan Recording District placer location certificates with BLM in June 1978 pursuant to 43 U.S.C. § 1744(b). At the request of BLM, OPCC amended this filing in January, 1979 to include legal descriptions of the land on which the claims were located and a USGS map showing the claim locations. There is no dispute that through these filings OPCC complied with the "locating" requirements of 43 U.S.C. § 1744(b). *See also* 43 C.F.R. § 3833.1–2 (1982) (regulations implementing this subsection).

On November 8, 1978, pursuant to 43 U.S.C. § 1744(a), OPCC filed affidavits of assessment work for the assessment year ending September 1, 1978 and for the as-

---

**1.** For a further discussion of the history and purposes of Section 314 see *Topaz Beryllium Co. v. United States,* 649 F.2d 775 (10th Cir.1981); *Topaz Beryllium Co.,* 479 F.Supp. at 312–14; *Locke v. United States,* 573 F.Supp. 472, 477 (D.Nev.1983).

sessment year ending September 1, 1979.[2] Thus, plaintiff's affidavit of assessment work for the assessment year ending September 1, 1979 was on file with the BLM throughout the entire 1979 calendar year. Nevertheless, the IBLA held that OCPP's claims were abandoned and void for failure to file assessment work during the 1979 calendar year. The IBLA reasoned that because OPCC filed proof of assessment work during 1978, Section 314(a) required an annual filing during the 1979 calendar year. Since OPCC's 1979 report was filed early, namely in November 1978, no proof of assessment work was filed during 1979 and therefore OPCC's claims were "abandoned." As can be seen, OPCC's only error was filing a required report *too early!*

OPCC argues that the IBLA's decision is inconsistent with the statutory language of Section 314 in two areas. First, OPCC maintains that the statute only requires annual reports of assessment work to be filed after October 21, 1979, and not after the initial filing of assessment work. Therefore, because no annual filing was required in 1979, no abandonment occurred. Second, OPCC maintains that the statute's words "prior to December 31 of each year thereafter" should not be read to require calendar year filing. According to this argument, OPCC's 1979 filing of November 1978 was "prior to December 31" and therefore timely. These challenges to the IBLA decision are also a challenge to BLM's regulations implementing Section 314 for the reason the IBLA grounded its decision in part on those regulations.

II. *Standard of Review*

■ This court's review of an IBLA decision is limited to an examination of whether it was arbitrary, capricious, an abuse of its discretion, unsupported by substantial evidence, or not in accordance with law. 5 U.S.C. § 706 (1982); *Baker v. United States,* 613 F.2d 224, 226 (9th Cir.), *cert. denied* 449 U.S. 932, 101 S.Ct. 332, 66 L.Ed.2d 157 (1980). The court need not

affirm the administrative decision if the decision is inconsistent with a statutory mandate or frustrates the policy underlying the statute. *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965); *Schade v. Andrus,* 638 F.2d 122 (9th Cir.1981). As was stated by the Ninth Circuit elsewhere:

> The Administrative Procedure Act mandates that the reviewing court decide all relevant questions of law [and] interpret constitutional and statutory provisions ...." 5 U.S.C. § 706. We must nonetheless give due deference to the interpretation of statutes and regulations by the agency charged with their administration. *Loma Linda University v. Schweiker,* 705 F.2d 1123, 1126 (9th Cir. 1983); *Committee for an Independent P–I [v. Hearst Corp.]* 704 F.2d [467] at 472. Our task, then, is not to interpret the statutes as we think best, but rather to inquire whether the Coast Guard's construction was "sufficiently reasonable" to be accepted. *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23, 34 (1981). "To satisfy the standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.*

*Western Pioneer, Inc. v. United States,* 709 F.2d 1331, 1335 (9th Cir.1983).

■ The amount of deference required and the standard of review for agency decisions reached by rulemaking, i.e., regulations, is similar to that required when agency decisions are reached by adjudication. *See id.* Thus, implementing regulations are valid if they implement the mandate of Congress, as expressed in the statute in some reasonable way. *Rowan Cos. v. United States,* 452 U.S. 247, 252–53, 101 S.Ct. 2288, 2292–93, 68 L.Ed.2d 814 (1981). "In determining whether a regulation car-

---

**2.** The mining assessment year is defined in 30 U.S.C. § 28 (1976). Under this section, if a miner fails to do annual assessment work on a claim, the claim is subject to forfeiture if the claim is then relocated by another miner.

ries out the congressional mandate in the proper manner, [a court must] look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." *Id.* at 253, 101 S.Ct. at 2293; *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1348 (9th Cir.1982). *See also Committee for an Independent P-I v. Hearst Corp.*, 704 F.2d 467, 473 (9th Cir.) ("A court is obliged to accept the administrative construction of a statute only so far as it is reasonable ... and consistent with the intent of Congress in adopting the statute."), *cert. denied* —— U.S. ——, 104 S.Ct. 236, 78 L.Ed.2d 228 (1983).

■ While the court must treat the agency decision with deference in this case, the nature of the review required here tempers the amount of deference due. The statutory mandate in Section 314 regarding recording and abandonment is detailed and specific, not broad and general. This is unlike the situation where Congress has left the agency a mandate to define a general term or implement a broad policy, in which case agency discretion would be at its greatest. Here, Congress constrained the BLM's discretion by use of specific statutory language. Deference is therefore less appropriate. *See First Charter Financial Corp.*, 669 F.2d at 1348.

In a similar situation, the Supreme Court stated:

The framework for analysis is refined by consideration of the source of the authority to promulgate the regulation at issue. The Commissioner has promulgated Treas.Reg. § 1.1563–1(a)(3) interpreting this statute only under his general authority to "prescribe all needful rules and regulations." 26 U.S.C. § 7805(a). Accordingly, "we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." *Rowan Cos. v. United States*, [452] U.S. [247], [252], 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981). In addition, Treas.Reg. § 1–1563–1(a)(3) purports to

do no more than add a clarifying gloss on a term—"brother-sister controlled group"—that has already been defined with considerable specificity by Congress. The Commissioner's authority is consequently more circumscribed than would be the case if Congress had used a term " 'so general ... as to render an interpretive regulation appropriate.' " *National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979), quoting *Helvering v. R.J. Reynolds Co.*, 306 U.S. 110, 114, 59 S.Ct. 423, 425, 83 L.Ed.2d 536 (1939). *See also Rowan Cos. v. United States, supra.*

*United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24–25, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). The situation facing this court is identical to that described by the *Vogel Fertilizer* Court. The BLM, in promulgating the regulation, was acting under a general, not a specific, grant of authority. *See* 43 U.S.C. § 1740 (1976). Further, in regards to setting filing dates, the BLM was merely clarifying specific statutory language rather than interpreting a general term. For both these reasons, in reviewing the regulations the court must closely scrutinize them and give them less than maximum deference.

III. *Are Annual Assessment Reports Required Prior to October 21, 1979?*

■ The filing requirements of FLPMA on assessment work are contained in Section 314(a).

§ 1744. **Recordation of mining claims**

(a) Filing requirements

The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection. The owner of an unpatented lode or placer mining claim located after October 21, 1976 shall, prior to December 31 of each year following the calendar year in which the said claim was located, file the instru-

ments required by paragraphs (1) and (2) of this subsection:

(1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit of assessment work performed thereon, on a detailed report provided by section 28–1 of Title 30, relating thereto.

(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.

FLPMA § 314, codified at 43 U.S.C. § 1744 (1976).

BLM's regulations implementing this section are located at 43 C.F.R. § 3833.2–1(a) (1982):[3]

### 3833.2–1 When filing required.

(a) The owner of an unpatented mining claim located on Federal lands on or before October 21, 1976, shall file in the proper BLM office on or before October 22, 1979, or on or before December 30 of each calendar year following the calendar year of such recording, which ever date is sooner, evidence of annual assessment work performed during the preceding assessment year or a notice of intention to hold the mining claim.

In order to review the basis and legality of this "abandonment" it is important to understand that there are two sets of rules creating filing requirements, one statutory and one regulatory, and that these are in-consistent with one another. Failure to comply with either set may cause a miner to lose his or her claim. As noted above, Section 314 requires miners to file (1) a recording of location once prior to October 22, 1979 (*see* § 314(b)), and (2) according to IBLA, affidavits of assessment at least once prior to October 22, 1979 and annually after the initial *affidavit of assessment* has been filed. BLM's regulation, 43 C.F.R. 3833.2–1(a) (1982), requires filing of (1) a recording of location once prior to October 22, 1979 and (2) according to IBLA, affidavits of assessment at least once prior to October 22, 1979 and annually after the *certificate of location* is filed for record. *See Oregon Portland Cement Co.,* 66 IBLA at 206 n. 2; *Harvey A. Clifton,* 60 IBLA 29, 33 (1981). Given the conflict between IBLA's interpretation of the statute and its interpretation of the regulations, it becomes possible to meet statutory but not regulatory filing requirements, *see, e.g., Harvey A. Clifton, supra,* or to meet regulatory but not statutory requirements, as may have occurred in this case.[4]

The IBLA based its decision in this case on statutory, not regulatory grounds. *See* 66 IBLA at 206–07. Therefore, the major emphasis of this court's review will be whether the IBLA interpreted the statute correctly. Nevertheless, BLM's regulations must be reviewed as well. The BLM interpreted the phrase "and prior to December 31 of each year thereafter" to require annual calendar year filings during the three year 1976–1979 grace period. Because the IBLA presumably relied on this interpretation of the statute in its determination that OPCC was required to file in 1979, the court must question the validity of BLM's interpretation as well.

---

**3.** The BLM regulations have been revised substantially since the time of the IBLA decision. The current version of this regulation is now located at 43 C.F.R. § 3833.2–1(b)(1) (1983). Because this case involves a challenge to the regulations in effect in 1979, the court will only refer to the version of this regulation appearing in the 1982 Code of Federal Regulations.

**4.** Assuming, arguendo, that the recording of location did not occur until all documents were submitted in 1979, then OPCC would have met regulatory but not statutory requirements. The court, however, declines to address the issue whether the final filing relates back to the initial filing for purposes of triggering the annual reporting requirement. *See Marion Birch,* 53 IBLA 366 (1981).

As noted above, the IBLA interpreted Section 314 to require proof of assessment work be filed annually within each calendar year following the year initial filing of assessment work occurred. OPCC contends, however, that the phrase "thereafter" refers to the phrase "within the three year period" and that consequently annual filings are only required after October 21, 1979. On the other hand, the government argues that BLM's interpretation of the statute as requiring annual filing after the initial filing of assessment work is reasonable and must be accepted by this court. The court finds, for the reasons stated below, that the IBLA interpretation and BLM regulation are inconsistent with the plain language of the statute and therefore the administrative decision must be reversed.

First, a common-sense reading of the statute indicates that "thereafter" must modify the words "within the three-year period." There is no other phrase or word that thereafter could possibly modify. OPCC's interpretation of the statute is the only reasonable interpretation available. This conclusion is buttressed by an analogy to a settled rule of statutory construction, the "doctrine of last antecedent." "[U]nder the 'doctrine of last antecedent,' qualifying words, phrases, and clauses are to be applied to the words or phrase immediately proceeding, and are not to be construed as extending to and including others more remote." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir.1975); *accord, First Charter Financial Corp.*, 669 F.2d at 1350. Similarly, the word "thereafter" should be read as referring to the immediately antecedent phrase, "within the three year period."

Had Congress intended that reports be filed annually after the initial filing, it would have required that in plain language, as it did with claims located after October 21, 1976. In the sentence immediately following the one under discussion, Congress required owners of claims located after October 21, 1976 to file proof of assessment work "prior to December 31 of each year following the calendar year in which said claim was located." 43 U.S.C. § 1744(a).

This comparison of congressional treatment of claims located before October 21, 1976 and those located after that date shows that Congress was aware of the problem of when to require annual filings and chose not to require them, at least for claims located prior to 1976, until after the initial three year filing period.

This result is logical as well. For claims located prior to 1976, the statute allows owners to file their initial proof of assessment work any time before October 1979. Thus, some owners would initially file assessment work in 1977, and some not until October 20, 1979. Because of the presence of this three-year grace period, BLM could not expect to have a complete record of mining claims until October 21, 1979. Little, if any, useful purpose is served by requiring annual filings prior to that date for the reason that BLM could not reasonably rely on their mining claim records until after the close of the three-year grace period. It is only at the close of the grace period, when the records would be complete, that the need to keep the records current arises. Consequently, no congressional purpose or policy is served by BLM's claim of abandonment. *See also NL Industries, Inc. v. Watt*, No. CIV–LV 82–176, RDF (D.Nev. Mar. 13, 1984) (finding BLM's position on annual filings to be inequitable and illogical).

The logic of this interpretation is supported by examining the structure of the whole section. Section 314(b) requires that information on the mining claim's location be filed prior to October 22, 1979. The statute does not require, contrary to Judge Stuebing's suggestion in his dissent to *Clifton*, "that the recordation of the notice of location must precede (or be made simultaneous with) the filing of one of the other documents described in [Section 314(a)]." 60 IBLA at 41. However, while the statute does not require this, logic certainly does. *See id.* at 41–42. The only way to harmonize the filing requirements of 314(a) and (b) is to interpret 314(a) as requiring annual reports *after* the three-year grace period. To read 314(a) otherwise leads to the ano-

malous result, noted by Judge Stuebing, of requiring annual assessment reports before a claim is officially recorded and located with the BLM. Such annual reports would be of little, if any, use to BLM because information on the location of the claim would not also be available.

Finally, the court notes that forfeiture provisions must be construed narrowly. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980). BLM has construed Section 314 broadly to create forfeiture in questionable situations. For this reason, and the other reasons stated above, the court finds that Section 314 only requires that one proof of assessment work or notice of intent to hold and one recordation of location be filed prior to October 22, 1979. IBLA's decision below is contrary to law and must be reversed.

IV. *Must Affidavits of Assessment be Filed After January 1?*

 OPCC also argues that the IBLA and BLM erred in requiring affidavits of assessment to be filed after January 1 rather than any time after the assessment work was completed. Because the statute merely requires affidavits be filed "prior to December 31 of each year thereafter", OPCC claims that its November 1978 affidavit, having been filed "prior to" December 31, met statutory requirements.

This portion of the controversy arises in part because the mining assessment year does not coincide with the calendar year. In order to avoid forfeiting their claims, miners must do assessment work each assessment year. *See* 30 U.S.C. 28 (1976). For purposes of this forfeiture statute, the assessment year runs from noon September 1 until noon September 1. 30 U.S.C. § 28. As is a common industry practice, OPCC scheduled their assessment work to overlap both ends of the September 1, 1978 new assessment year. *See* 66 IBLA at 209. This allowed them to save substantial time and expense, given the remote location of the claim. OPCC then prepared affidavits

of assessment for both the 1978 and 1979 assessment years and filed these with the local authority as required by 49 U.S.C. § 49e (1976) and Section 314(a)(1) and with the BLM pursuant to 314(a)(2).

The court finds strong evidence it was Congress' intent to accommodate the mining practices followed by OPCC. First, Congress clearly was aware of the assessment year concept in passing Section 314. It referred to 30 U.S.C. § 28-1, which requires local filing of work on an assessment year basis. It also made specific reference to "calendar" years elsewhere in Section 314, i.e., in its discussion of claims filed after October 21, 1976. Given congressional awareness of the assessment year and mining practices, it becomes significant that the statute does not specifically require calendar year filing. When Congress wanted action based on the calendar year elsewhere in the statute, it specifically required it. Second, Congress only set a *closing* date for filing. Viewed in light of the statute's background, it is reasonable to assume that the purpose of the phrasing is to accommodate assessment practices, namely to allow filing any time after assessment work is completed.[5] Third, the requirement of a December 31 filing deadline is at least as consistent with congressional intent to create a four-month grace period between the end of the assessment year and the filing deadline as it is with intent to create calendar year filing.

The court therefore concludes it is reasonable to interpret Section 314 to allow early filing of assessment work. Because deference must be given to an agency's interpretation of a statute, this court must nevertheless accept BLM's interpretation so long as it is reasonable and consistent with statutory mandate.

The court agrees with the IBLA that the statute is amenable to the interpretation given it by the BLM. *See James V. Joyce*, 56 IBLA 327, 329 (1981) (on reconsideration). However, because no reasonable ad-

---

5. Congress acknowledged these practices and shaped a statute to accommodate them elsewhere. *See* 30 U.S.C. § 28-1 (1976) (allowing one survey of a mining claim to be applied as assessment labor for two consecutive years).

ministrative purpose is furthered by BLM's interpretation of Section 314, the agency interpretation places additional administrative burden on mine owners without justification. In addition, the agency's disregard of established mining practices in establishing a calendar year filing system is arbitrary and capricious. Because the agency was arbitrary in ignoring established mining practices and because no justification supports BLM's use of the calendar year in establishing filing requirements for filing proof of assessment work, the agency's interpretation of the statute is unreasonable.

The government claims that if BLM is not allowed to use a calendar year system, a major purpose of Section 314, keeping BLM informed of the continued interest of claimants in claims will be frustrated. The court agrees that keeping BLM records current is important. However, it cannot agree with the government's protestations of impending doom if BLM is required to recognize filings of assessment work of the type that occurred in this case. Under a calendar year system, federal land managers must look back in the claim file *twelve* months to determine if there is continued interest in the claim (from Dec. 30 to Jan. 1). If mine owners are allowed to file assessment work any time after it is performed, the only change would be that land managers would be required to look back in the file *sixteen* months (from Dec. 30 to the previous Sept. 1). This change of four months should not impair the usefulness of the records to federal officials.

The IBLA stated in *James V. Joyce, supra,* that if early filing were allowed for assessment work, the same logic would require early filing of notices of intent to hold claim.[6] "Thus, an individual could file in one year separate documents manifesting an intent to hold for each of the next 5

years." 56 IBLA at 330. This argument lacks merit, however. There is no language in the statute that requires notices of intention to hold to be treated identically with affidavits of assessment work. BLM easily could have created different filing dates for different types of filing.[7] In other words, the logic that supports allowing affidavits be filed within the four-month period prior to a calendar year does not support allowing notices to be filed 10 years in advance, as IBLA contends.

The government also argues that

to permit a mining claimant to file proof of assessment work in the last 4 months of the calendar year in which it should be filed, albeit within the assessment year, would permit a mining claimant to effectively skip filing proof of assessment every other year.... For instance, a mining claimant could file in November 1978 for the 1979 assessment year and file in December 1980 for the 1980 assessment year, effectively skipping any filing in 1979.

*See Oregon Portland Cement Co.,* 66 IBLA at 210. The court agrees this result is possible, but doubts requiring annual filing will lead to a markedly different result. In the government's hypothetical, 25 months elapse between filings. Under a calendar year filing system, the November 1978 filing could be filed January 1979 instead and the 1980 filing in December, 1980, as before. Thus, the result of requiring calendar year filing is merely to reduce the complained of gap between filings from 25 to 23 months. The court does not find that the statute's purposes or congressional intent will be furthered by reducing the gap between filings by two months.

■ In the decision below, the IBLA spent considerable effort analyzing the concept of a "notice of intention to hold" and whether Congress intended that Section

---

6. According to the statute and regulations, mine owners may file a notice of intention to hold claim as a substitute for proof of assessment work. *See, e.g.,* 43 C.F.R. § 3833.2–3(a) (1983).

7. Or else, BLM could require both notices of intention to hold and affidavits of assessment be filed within the sixteen month September to December period. The statute does not forbid BLM from setting an opening date for filing. However, the opening date set by BLM must be reasonable.

314 work to enforce the assessment requirements of 30 U.S.C. § 28 and 28–1. The court does not argue with the IBLA's analysis on these points. However, there is no logical connection between this analysis and the IBLA's conclusion, namely "the assessment year simply has no relevance to recordation." 66 IBLA at 210. The mere fact that the assessment year is a mining practice of long standing is sufficient to make it relevant. As the IBLA admitted: "We recognize that it is a common practice for mineral claimants to work over the end of an assessment year and thereby fulfill the labor requirements for 2 years." *Id.* at 209. In promulgating regulations under Section 314, BLM was not writing on a blank slate. It was working in the context of well-established mining industry practices, practices of which Congress was aware. For IBLA to say that industry practices should have no relevance to agency regulations is simply wrong. Rather, the agency's failure to consider an existing statutory scheme (30 U.S.C. §§ 28 and 28–1) and industry practices in promulgating regulations is both arbitrary and capricious.[8]

Finally, the facts of this case speak for themselves. For an agency to declare mining claims abandoned because proof of assessment work was filed two months too early is inherently unreasonable. The arguments offered by the government and the IBLA in support of the IBLA decision do not offer reasonable support for the government's position or show why this inherently unreasonable decision should be considered reasonable.

Accordingly, the court holds that the agency's decision to disregard the November 1978 filing was arbitrary, capricious, and, because the regulation does not interpret the statute in a reasonable manner, contrary to law.[9]

Accordingly, IT IS ORDERED:

(1) THAT plaintiff's motion for summary judgment is granted;

(2) THAT defendants' motion for summary judgment is denied;

(3) THAT the decision of the IBLA in *Oregon Portland Cement Co.*, 66 IBLA 204, is reversed and this case is remanded;

(4) THAT the IBLA take such further actions as are required by this opinion.

---

**8.** One relevant and important consideration is convenience of the miners. For the reasons stated above, no significant government interest is furthered by requiring miners to make two separate trips to the BLM, one prior to December 31 and one in January, when all papers are presumably prepared and ready to be filed at one time.

**9.** The court does not reach the issue whether the conclusive presumption of abandonment in the face of evidence to the contrary violates due process. *See Rogers v. United States*, 575 F.Supp. 4 (D.Mont.1982); *Locke v. United States*, 573 F.Supp. 472 (D.Nev.1983).