**RED TOP MERCURY MINES, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 88–4270.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Oct. 3, 1989.

Randall E. Farleigh, Anchorage, Alaska, for plaintiff-appellant.

Dean K. Dunsmore, Asst. U.S. Atty., Anchorage, Alaska, for defendant-appellee.

Before O'SCANNLAIN, LEAVY and TROTT, Circuit Judges.

## ORDER

For the reasons stated in the order of the district court entered on September 19, 1988, in the District of Alaska, we affirm the district court's dismissal of this case.

We adopt the district court's eighteen-page analysis as appended, finding it dispositive of all issues on appeal.

AFFIRMED.

## APPENDIX

Plaintiff, Red Top Mercury Mines, Inc., brings this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706 seeking judicial review of the decisions of the Department of the Interior as rendered by the Interior Board of Land Appeals ("IBLA") in *Red Top Mercury Mines, Inc.*, 96 I.B. L.A. 391 (Apr. 14, 1987). At issue are six unpatented mining claims which the Department of the Interior, Bureau of Land

Management (BLM), declared were abandoned by operation of 43 U.S.C. § 1744(a).

The general mining laws of the United States, 30 U.S.C. § 22, *et seq.*, and the practice thereunder were described by the United States Supreme Court in *United States v. Locke*, 471 U.S. 84, 86–90, 105 S.Ct. 1785, 1788–90, 85 L.Ed.2d 64 (1985). *See also Best v. Humboldt Mining Co.*, 371 U.S. 334, 335–36, 83 S.Ct. 379, 381–82, 9 L.Ed.2d 350 (1963); 1 Rocky Mountain Mineral Law Institute, *America Law of Mining*, 53–70 (1983). From the 19th Century until 1976, location and development of mineral deposits on public lands was subject to few constraints. Discovery of a valuable mineral deposit, in conjunction with minimal procedures to locate a claim boundary on the ground embracing the deposit, gave an individual the right of exclusive possession of the lands for mining purposes. This right of exclusive possession could be retained as long as the claimant maintained the claim under 30 U.S.C. § 28, usually by conducting at least $100 of assessment work annually. For purposes of assessment work, the assessment year commenced at "12 o'clock meridian on the 1st day of September." 28 U.S.C. § 28.

For a nominal fee, a patent could be obtained, but this was an option the claimant could exercise or ignore, and patenting was the exception not the rule.

By 1976, the number of unpatented mining claims seriously complicated management of the public lands. There was no federal system for recording either location notices or evidence of annual assessment work on existing claims. Location and recording requirements were determined by state law and local mining district customs. In 1976, Congress remedied this in the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701, *et seq.* Pursuant to section 314 of the FLPMA, 43 U.S.C. § 1744,[1] a claimant had three years within which to register all existing claims with the BLM, and thereafter a claimant had to annually file with the BLM either a notice of intent to hold or proof of completion of the annual assessment work. This action involves the requirement of 43 U.S.C. § 1744(a) to annually file either a notice of intention to hold or an affidavit of assessment work.

The Department of the Interior has promulgated regulations to implement the

---

1. Section 1744 of Title 43, United States Code, provides in pertinent part:

Recordation of mining claims

(a) Filing requirements

The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection....

(1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit of assessment work performed thereon, on a detailed report provided by section 28–1 of Title 30, relating thereto.

(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.

(b) Additional filing requirements

The owner of an unpatented lode or placer mining claim or mill or tunnel site located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, file in the office of the Bureau designated by the Secretary a copy of the official record of the notice of location or certificate of location, including a description of the location of the mining claim or mill or tunnel site sufficient to locate the claimed lands on the ground....

(c) Failure to file as constituting abandonment; defective or untimely filing

The failure to file such instruments as required by subsections (a) and (b) of this section shall be deemed conclusively to constitute an abandonment of the mining claim or mill or tunnel site by the owner; but it shall not be considered a failure to file if the instrument is defective or not timely filed for record under other Federal laws permitting filing or recording thereof, or if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim or mill or tunnel site.

A somewhat different scheme applies to claims located after October 21, 1976, the date the FLPMA took effect.

FLPMA. The portions of these regulations relevant to this action are set forth below.

§ 3833.0–5  Definitions.

As used in this subpart:

. . . .

(n) "Assessment year" is defined in 30 U.S.C. § 28 and commences at 12 o'clock noon on September 1st of each year. For the purpose of complying with the requirements of section 314(a) of the Act, the calendar year in which the assessment year ends is the year for which the evidence of annual assessment work shall be filed.

(o) "Filing year" for the purposes of complying with the Act begins on January 1st of each year and continues through December 30th.

§ 3833.2–1  When filing is required.

(a) . . . .

(1) Except as provided in paragraph (a)(2) of this section, the owner of an unpatented mining claim, mill site or tunnel site located within any unit of the National Park System shall file before October 22, 1979, and on or before December 30 of each calendar year after the year of recording . . . a notice of intention to hold the mining claim, mill site or tunnel site. Such notice shall be in the form prescribed by § 3822.2–3 of this title and shall be filed with the proper BLM office.

43 C.F.R. §§ 3833.0–5, 3833.2–1.

Pursuant to the requirements of 43 U.S.C. § 1744(a), plaintiff filed its notices of location with the BLM on December 20, 1976. Plaintiff's first notice of assessment work was received by the BLM on December 27, 1978. Thereafter, similar notices were received by the BLM on December 31, 1979, December 11, 1980, December 29, 1982, February 14, 1983, and December 10, 1984. With its first notice of assessment work, plaintiff established a pattern of doing this work in August and September of alternate years. This would allow plaintiff to do the assessment work required for two years in one continuous effort since the assessment year starts on September 1.

On July 25, 1985, the BLM issued a decision which determined that the six unpatented mining claims at issue as well as one mill site were deemed abandoned and declared void for failure to timely file one or more of the assessment work notices or notices of intention to hold for the years 1981 and 1984. Plaintiff was notified that this determination could be appealed to the IBLA. A "Notice of Appeal and Statement of Reasons" in support of the appeal was received by the BLM on August 26, 1985.

On appeal to the IBLA, plaintiff asserted four errors. It contended that annual notices were filed in 1981 and 1984. It contended that the filing of a combined statement of assessment work for assessment years 1980–81 in calendar year 1980 complied with the requirements of 43 U.S.C. § 1744(a) for filing in 1981 as well as 1980. Plaintiff argued in the alternative that a letter received by the BLM in 1981 should be treated as an acceptable notice of intention to hold. Finally, plaintiff argued that its failure to make required filings for its mill site was a curable defect.

On appeal, it was conceded on behalf of the BLM that indeed the required filing was made in 1984. A notice of assessment work for the years ending September 1, 1984, and September 1, 1985, was received by the BLM on December 10, 1984, but returned to plaintiff as incomplete. As noted at that time, the defect in the document was deemed curable. As indicated therein, the missing information was to have been provided within thirty days. There is no indication in the record that plaintiff provided the additional information within the thirty days allowed. Nevertheless, on appeal the IBLA agreed that the necessary filing had been made for 1984. *Red Top Mercury Mining, Inc.*, 96 I.B.L.A. 391, 393 (Apr. 14, 1987).

The IBLA also determined that, with respect to mill sites, 43 U.S.C. § 1744 only requires the filing of notices of location. The annual filing of notices of intention to hold is only required by regulation, and is a defect which the claimant must be given an opportunity to correct. Accordingly, the

decision that the mill site was abandoned was reversed.

The IBLA did, however, determine that no notice of assessment work was filed in 1981 with respect to the six unpatented mining claims. It also held that a letter dated March 17, 1981, was insufficient to meet the requirements for a notice of intention to hold. Accordingly, the IBLA affirmed the BLM determination that the six mining claims were abandoned. This action followed.

The following interrelated issues are now presented to this court:

(1) Did plaintiff file an evidence of assessment work for 1981 as required by 43 U.S.C. § 1744(a)?

(2) Did the filing of a combined notice in 1980 for assessment work performed for the 1980 and 1981 assessment years comply with the requirements of 43 U.S.C. § 1744?

(3) Did plaintiff's letter of March 17, 1981, constitute a notice of intention to hold for purposes of 43 U.S.C. § 1744(a)?

This court's review is limited to: whether the agency's decision was arbitrary, capricious, or an abuse of discretion; whether the agency considered all relevant facts; and whether the agency complied with all applicable procedural requirements. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); *MarkAir, Inc. v. CAB, Inc.*, 744 F.2d 1383, 1385 (9th Cir.1984); *Arizona Past & Future Foundation, Inc. v. Lewis*, 722 F.2d 1423, 1425 (9th Cir.1983).

As long as the interpretation of a statute is reasonable, the court may not substitute its own interpretation. *State of Alaska v. Lyng*, 797 F.2d 1479, 1481 (9th Cir.1986), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). In *N.L. Indus., Inc. v. Secretary of the Interior*, 777 F.2d 433 (9th Cir.1985), a case specifically involving the annual filing provisions of 43 U.S.C. § 1744(a), the Ninth Circuit Court of Appeals stated:

The district judge observed that more than one reasonable interpretation of section 314(a) was possible, but that his own interpretation was the "most reasonable" one. Because the proper standard of review is whether the Secretary's interpretation is "arbitrary and capricious," however, the district judge is not free to substitute his own interpretation, even if more reasonable.

*Id.* at 440.

### *Did Plaintiff File a Notice of Assessment Work in 1981?*

The administrative record in this case does not show that any notice of assessment work was filed in 1981. The only documents received in 1981 contained in the record are:

(1) a letter dated March 17, 1981, from DOWL Engineers to the BLM, received by the BLM on March 19, 1981;

(2) a letter dated March 17, 1981, from DOWL Engineers to the BLM, received by the BLM on March 20, 1981; and

(3) a letter dated April 15, 1981, from Maurice P. Oswald of DOWL Engineers to the BLM.

Plaintiff does not dispute the fact that the BLM's records contain no evidence of the filing of a notice of assessment work in calendar year 1981. On December 11, 1980, plaintiff filed a notice of annual labor for assessment work done in August and September of 1980. Plaintiff, however, stated before the IBLA that:

It [Red Top] has no documents to prove that it, in fact made a duplicate filing for the 1980–81 year, although affiant believes in all probability he made a duplicate filing for 1981.

Admin.Rec. at AA–12608, pp. 50–51. The basis for this statement is the affidavit of plaintiff's chief officer, Clarence Wren:

I believe that I submitted another copy of my combined 1980 and 1981 assessment year notice to the BLM in 1981....

Admin.Rec. at AA–12608, p. 45.

There is a presumption of regularity in the performance of their duties by govern-

ment officials. *Citizens to Preserve Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823; *Daly v. Volpe,* 514 F.2d 1106, 1111 (9th Cir.1975).

The situation before us is similar to the circumstances in *Wilson v. Hodel,* 758 F.2d 1369 (10th Cir.1985). In *Wilson,* at 1370, the issue before the court was the "application of the presumption of administrative regularity as it relates to the filing by potential lessees of requisite information in the Department of Interior's noncompetitive oil and gas leasing program." The BLM found that Wilson was not qualified to obtain a lease for failure to submit certain information. On appeal, "Wilson argued that the requisite information had originally been submitted and that, if the Utah BLM office did not have the information, that office had either lost or misplaced it." *Id.* at 1372.

The only proof offered by Wilson that the information had been provided was an affidavit from an officer of the agent who had submitted Wilson's entry in the leasing program; the affidavit described the general practices used by them in submitting such applications. *Id.* Wilson did not, however, show what procedures were in fact applied in that instance. *Id.* at 1373. The court of appeals agreed with the IBLA that uncorroborated evidence was not, in a lost document case, sufficient to rebut the presumption. *Id.*

Plaintiff concedes the absence from the administrative record of written evidence of the duplicate filing. Plaintiff admits to being unable to specifically recall (approximately five years later) the specific mailing of such document to the BLM. Plaintiff points to the affidavit of Clarence Wren, the present principal shareholder and president of plaintiff corporation, which indicates that it was Wren's practice to file with the BLM on an annual basis since 1978 evidence of annual assessment for his work upon the Red Top claims. Plaintiff argues that the regularity of this practice is evidenced in the filings which the BLM has now acknowledged, including that for 1984. Wren resides in Dillingham, Alaska,

and normally was required to mail his requisite filings to the BLM as well as to his local recording office (Bristol Bay District).

Plaintiff asserts that the initial absence of evidence in the case file of the 1984 filing, coupled with the practice of regularity of plaintiff's filings, should be sufficient evidence both to suggest an actual duplicate filing by plaintiff and to overcome any presumption of regularity of the BLM in this case.

Plaintiff has not presented sufficient evidence to overcome the presumption of regularity by the BLM. Plaintiff does not state that such a notice was filed, but only that the practice was to file, and it is believed that a filing was made in 1981. As in *Wilson,* no corroborating evidence was presented that the notice of assessment work was indeed filed in 1981.

*Did the Filing of a Combined Notice in 1980 for Assessment Work performed for the 1980 and 1981 Assessment Years Comply with the Requirements of 43 U.S.C. § 1744?*

On December 11, 1980, Clarence Wren of Red Top Mercury Mines, Inc., filed with the BLM a copy of the combined 1980 and 1981 assessment year notice which was recorded in the Bristol Bay Recording District. The notice for the 1980–81 assessment years represented work performed upon the mining claims in August and September of 1980. In doing so, Red Top Mercury Mines, Inc., straddled the assessment year for 1980 (ending on September 1, 1980, at 12:00 noon) and for 1981 (commencing at noon on September 1, 1980).

The District of Alaska has previously upheld a single filing of such evidence of assessment work for two assessment years with the BLM as satisfying the FLMPA filing requirement under 43 U.S.C. § 1744(a). In *Oregon Portland Cement Co. v. United States Dep't of the Interior,* 590 F.Supp. 52, 59 (D.Alaska 1984), the court agreed that the statute could be interpreted as the BLM had done, but concluded that the interpretation was unreasonable because no administrative purpose was furthered and because it placed an

additional burden on mine owners. *Id.* at 59–60. However, the Supreme Court and the Ninth Circuit have more recently held that the annual filing requirements place only a minimal burden on the mine owner. *United States v. Locke,* 471 U.S. at 106, 105 S.Ct. at 1798; *N.L. Indus., Inc.,* 777 F.2d at 439. The Supreme Court held in *Locke,* 471 U.S. at 106, 105 S.Ct. at 1798:

> [T]he restriction attached to the continued retention of a mining claim imposes the most minimal of burdens on claimants; they must simply file a paper once a year indicating that the required assessment work has been performed or that they intend to hold the claim.

Also, the Supreme Court holds this requirement to be an annual burden.

Furthermore, the issue here is not one of regulations, but of an interpretation of the statutory requirement. The agency's interpretation of the statutory requirement must be affirmed so long as it is a reasonable interpretation. *State of Alaska v. Lyng,* 797 F.2d 1479, 1481 (9th Cir.1986), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). This court may not substitute its own reasonable interpretation of the statute. *N.L. Indus.,* 777 F.2d at 439–40. As the Supreme Court states:

> [T]he fact that two interpretations of a statute are equally reasonable suggests to us that the agency's interpretation is sufficiently reasonable as to be acceptable.

*Locke,* 471 U.S. at 102–03 n. 14, 105 S.Ct. at 1797 n. 14.

While this court has a great deal of sympathy with the decision of Judge von der Heydt in *Oregon Portland Cement Co.* and would reach the same decision if at all possible, the Supreme Court's decision in *Locke* forecloses any such possibility. The Supreme Court held:

> [T]he Act [FLPMA] provides appellees with all the process that is their constitutional due. In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements. Here there can be no doubt that the Act's recording provisions meet these minimal requirements....
>
> [I]n the regulation of private property rights, the Constitution offers the court no warrant to inquire into whether some other scheme might be more rational or desirable than the one chosen by Congress; as long as the legislative scheme is *a* rational way of reaching Congress' objectives, the efficacy of alternative routes is for Congress alone to consider. "It is enough to say that the Act approaches the problem of [developing a national recording system] rationally; whether a [different notice scheme] would have been wiser or more practical under the circumstances is not a question of constitutional dimension." Because we deal here with purely economic legislation, Congress was entitled to conclude that it was preferable to place a substantial portion of the burden on claimants to make the national recording system work.

*Locke,* 471 U.S. at 108–10, 105 S.Ct. at 1799–1801, *quoting Usery v. Turner Elkhorn Mining,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (citations and footnotes omitted).

Thus, plaintiff has no right to any notice from the BLM stating that there has been a violation of the filing requirement. In effect, a miner could do everything right but—due to misfiling, a filing lost in the mail, or various other problems—could be in violation of the filing requirement, and years later be told that his claim is deemed abandoned. A logical outcome is that a miner may very well have put additional money into his claim during the intervening years without knowing his claim is abandoned. While this strikes the court as unfair, to remedy the situation would rewrite the Secretary's regulation and be contrary to the Supreme Court's holding in *Locke.* The court assumes, without deciding, that a

claimant could protect himself by mailing notices or affidavits of assessment work by certified or registered mail and with a return receipt requested.

The combined affidavit of annual labor filed by plaintiff in 1980 for the 1980 and 1981 assessment years does not satisfy the 1981 filing requirement. A filing "each year" is required. 43 U.S.C. § 1744(a).

*Did Plaintiff's Letter of March 17, 1981, Constitute a Notice of Intention to Hold for Purposes of 43 U.S.C. § 1744(a)?*

Defendant argues that plaintiff's letter of March 17, 1981, does not constitute a valid intention to hold for purposes of 43 U.S.C. § 1744(a).

On March 17, 1981, a letter was sent to the BLM from Maurice P. Oswald of DOWL Engineers on behalf of his client, Clarence Wren. The letter stated that he had prepared the composite location map of the Red Top group claims and mill site. The information referenced in the letter was in response to a BLM letter sent to Wren dated September 15, 1980, which cited his filing as being incomplete under the requirements of the FLPMA. Plaintiff also refers to a second letter from Oswald to the BLM sent on the same day enclosing a location map and indicating that a second mineral survey may be required. Plaintiff argues that these letters, sent to the BLM in 1981 and indicating continued interest in the mine, satisfy the statutory requirements for the filing of an intention to hold.

Subsection 1744(a)(2) requires that plaintiff file with the BLM "a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection" with the local office where the plaintiff's location notice is recorded. There is no evidence that any of the March 1981 letters on which plaintiff relies are copies of documents which were filed for record. Further, there is no evidence that, at the time the letters were sent, the plaintiff believed they constituted notice of intention to hold the mining claims. In reality, the letters were for the sole purpose of providing information for the incomplete 1980 filing.

While the documents "evidence a 'continual interest' in the claims," *Red Top Mercury Mines, Inc.,* 96 I.B.L.A. 391, 195 (1987), these letters do not meet the filing requirement of 43 U.S.C. § 1744(a)(1) as a notice of intention to hold.

Plaintiff argues that the statute does not prescribe the form a notice must take. Plaintiff further asserts that it is clear that the letters generally meet the requirements referred to by the IBLA in *Add–Ventures, Ltd.,* 95 I.B.L.A. 44, 49 (1986), with the exception of it being the same document that would be recorded with the state. Plaintiff points to 43 U.S.C. § 1744(c) and argues that, as a notice of intention to hold, the document might be deemed only nominally defective for which forfeiture is excused. Under subsection 1744(c):

> The failure to file such instruments as required by subsections (a) and (b) of this section shall be deemed conclusively to constitute an abandonment of the mining claim or mill or tunnel site by the owner; but it shall not be considered a failure to file if the instrument is defective or not timely filed for record under other Federal laws permitting filing or recording thereof.

Defendant argues that plaintiff interprets this section incorrectly. Defendant asserts that of crucial importance to this section is the qualification that the defective filing be a filing "for record under other Federal laws." According to defendant, the phrase "other Federal laws," by its very plain words, means laws other than the FLPMA. Defendant argues that absent a clearly expressed legislative intent to the contrary, the plain meaning of the words of the statute are controlling. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). Furthermore, when the question is one of filing deadlines, a literal reading of the statute is

generally the only proper reading. *Locke,* 471 U.S. at 93, 105 S.Ct. at 1791.

This section has been interpreted by the Department of the Interior which is the agency charged with administration of 43 U.S.C. § 1744(c). In *John Murphy,* 58 I.B. L.A. 75, 82 (Sept. 22, 1981), the IBLA determined:

> However, a more careful reading of subsection (c) shows that Congress wanted to make clear that any defect or untimeliness of a filing or recordation made under other Federal laws shall not affect a mining claim's validity if it is otherwise valid under FLPMA. However, where, as here, the particular requirements of FLPMA have not been met, the conclusive presumption of abandonment becomes effective.

This court may not substitute its own interpretation of 43 U.S.C. § 1744(c) unless the interpretation of the agency is unreasonable. Defendant argues that adopting plaintiff's reading of the statute would be inconsistent with the very purposes of 43 U.S.C. § 1744 as described in *Locke,* 471 U.S. at 87, 105 S.Ct. at 1788, for it would allow virtually any filing to negate the conclusive abandonment declared in 43 U.S.C. § 1744 and would effectively thwart the statutory purpose of removing stale claims and providing the BLM with an efficient way to administer and determine current land status.

The IBLA's interpretation is not the only reasonable one conceivable; but it is reasonable.

Even if the court were to accept plaintiff's interpretation of 43 U.S.C. § 1744(c), plaintiff could not prevail on the facts of its case. None of the plaintiff's actions could be reasonably construed as affirmative efforts to comply with the pertinent provisions of 43 U.S.C. § 1744(a). There is no evidence that plaintiff actually attempted to submit a proof of completed annual assessment work or a notice of intent to hold, nor is it arguable that the letters may have constituted a "nominally defective" notice of intent, possibly involving the provisions of 43 U.S.C. § 1744(c). In this case, the court finds that there was simply a failure to file.

Plaintiff also contends that, pursuant to 43 C.F.R. § 3833.4(b) (1985), it should first be given notice and opportunity to correct a defective filing before it can be found to have abandoned the claims at issue. At issue here is whether or not plaintiff met the FLPMA's filing requirements for 1981. The provisions of 43 C.F.R. § 3833.4(b) (1985) were not added to the regulations until December of 1982. *See,* 47 Fed.Reg. 56,307 (Dec. 15, 1982). Further, plaintiff did not rely on 43 C.F.R. § 3833.4(b) before the agency and did not raise the issue of whether this amendment should be applied retroactively to its 1981 filing. Accordingly, plaintiff may not now raise these issues before this court. *Marathon Oil Co. v. United States,* 807 F.2d 759, 768 (9th Cir. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

The March 17, 1981, letters did not constitute a notice of intent to hold the mining claims.

Based upon the foregoing, the decision of the IBLA in *Red Top Mercury Mines, Inc.,* 96 I.B.L.A. 391 (Apr. 14, 1987), is affirmed and this action is dismissed.

DATED at Anchorage, Alaska, the 16 day of September 1988.

/s/ H. Russel Holland
United States District Judge