**Hiram B. WEBB, Plaintiff–Appellant,**

**v.**

**Manuel LUJAN, Defendant–Appellee.**

**No. 91–15061.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 14, 1992 *.

Memorandum Filed Feb. 28, 1992.

Order and Opinion Filed March 30, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert D. Almquist, Murphy & Posner, Phoenix, Ariz., for plaintiff-appellant.

David C. Shilton, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant-appellee.

Before GOODWIN, FARRIS and POOLE, Circuit Judges.

## ORDER

The memorandum for this case, filed February 28, 1992, is redesignated an opinion authored by Judge Poole.

POOLE, Circuit Judge:

Appellant Hiram B. Webb appeals the district court's grant of summary judgment upholding a decision of the United States Department of the Interior Board of Land Appeals (IBLA). The IBLA determined that eleven of Webb's mining claims were void because they failed to comply with the requirements of the Federal Land Policy and Management Act (FLPMA) § 314, 43 U.S.C. § 1744. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I. FACTS

This case involves a series of mining claims situated near Phoenix, Arizona commonly referred to as the Turkey Track Granite Quarries. These lode claims [1]

---

**1.** The mining law recognizes a distinction between lode claims and placer claims. As ex- plained by 1 *American Law of Mining* § 30.05[2] (1984) (footnotes omitted):

arose at various times before 1973.[2] On October 22, 1979, Webb filed with the Bureau of Land Management (BLM) copies of the official record of all notices and the amended notices for the claims which had previously been filed in the office of the Maricopa County, Arizona Recorder. For seven of the claims Webb also filed copies of a "Notice of Intention to Hold Mining Claim Through Work and Possession," which had likewise been filed with the county recorder some years earlier. The effect of these filings are the central issue of this appeal.

The BLM rejected the filings because earlier decisions by its hearing examiners and the IBLA had held that the claims were void. Webb appealed to the IBLA, contending that the BLM erroneously failed to consider the provisions of 30 U.S.C. § 38.[3] Webb asserted placer rights pursuant to that provision and argued that the placer claims had never been contested by the BLM. Webb also argued that the claims did not have to be recorded with the BLM within the statutory deadline. The IBLA disagreed, holding that Webb could not obtain valid placer rights from invalid lode locations and that he had failed to follow the recording requirements mandated by FLPMA.

A lode deposit is a mineralized zone or belt of rock in place which has reasonable trend and continuity and is separated from the neighboring country (nonmineralized) rock by reasonably distinct boundaries on either side. A placer is defined negatively as a mineral deposit which is not a lode deposit. To err in locating a deposit as a lode or a placer, while sometimes difficult to avoid, is fatal to a claim because a lode deposit will not sustain a placer location and vice versa. *See also Cole v. Ralph*, 252 U.S. 286, 295, 40 S.Ct. 321, 325–326, 64 L.Ed. 567 (1920); *United States v. Haskins*, 505 F.2d 246, 251 (9th Cir. 1974); *Bowen v. Sil–Flo Corp.*, 9 Ariz.App. 268, 451 P.2d 626, 631–32 (1969) (quoting *Iron Silver Mining Co. v. Cheesman*, 116 U.S. 529, 6 S.Ct. 481, 29 L.Ed. 712 (1886)) (explaining the distinction).

2. In that year the Quarries were closed off to further mineral entry as a result of the City of Phoenix' application to convert the area to a public park, pursuant to the Recreation and Public Purposes Act, 43 U.S.C. § 869. *See Hiram Webb*, 105 IBLA 290, 293 (1988).

## II. DISCUSSION

### A. Application of FLPMA § 314 to Claims Under 30 U.S.C. § 38

Webb argues that FLPMA § 314 does not apply to placer claims made pursuant to 30 U.S.C. § 38. We review the BLM's interpretation of FLPMA under a deferential standard:

[O]ur review is limited to an examination of whether the decision of the Board was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law.

*NL Industries, Inc. v. Secretary of the Interior*, 777 F.2d 433, 437 (9th Cir.1985) (citations omitted) (quoting *Melluzzo v. Watt*, 674 F.2d 819, 820 (9th Cir.1982) (per curiam)); *see also Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202 (9th Cir.1989) (reaffirming that the deferential "arbitrary and capricious" standard applies to an IBLA interpretation of FLPMA § 314).

While the nation's mining laws allow those who are able to work the public lands to obtain title to certain mineral finds they may make,[4] FLPMA § 314 requires one who desires to validate a lode or placer mining claim to make certain filings with

3. This statute provides:

Where such person or association, they and their grantors, have held and worked their claims equal to the time prescribed by the statute of limitations for mining claims of the State ... where the same may be situated, evidence of such possession or working of the claims for such period shall be sufficient to establish a right to a patent thereto....

This statute was enacted as the Placer Act of 1870, ch. 235, 16 Stat. 217.

4. As explained by the Supreme Court in *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985):

The general mining laws, still in effect today, allow United States citizens to go onto unappropriated, unreserved public land to prospect for and develop certain minerals. "Discovery" of a mineral deposit, followed by the mineral procedures required to formally "locate" the deposit, gives the individual the right of exclusive possession of the land for mining

the BLM.[5] The IBLA has consistently held that these requirements apply to those who submit claims pursuant to 30 U.S.C. § 38.[6]

■ We must uphold an agency's construction of a statute if it is consistent with the unambiguous language of Congress, or if the statute is ambiguous, if it is reasonable. *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Section 314 applies the recording requirements to "owner[s] of ... unpatented lode or placer mining claim[s] located prior to the date of th[e] Act." This language admits of no exception. When a statute's language is clear, our inquiry ends. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82 (If Congress' intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). It is worth noting that the Supreme Court has previously relied upon the plain language of § 314 in upholding a literal interpretation by the Secretary. *See United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792–93, 85 L.Ed.2d 64 (1985) (affirming decision holding that statutory deadline of December 30 does not allow filing on December 31).

Even if the language were not so clear, however, we would be obligated to uphold the Secretary's construction of the statute. The legislative history clearly indicates that Congress did not intend to exempt any mining claims from the recording requirement:

[T]he committee ... address[ed] a particular procedural problem concerning the registration of mining claims—a problem which is particularly frustrating to the public land manager. The source of this problem is what is often termed "stale claims." There is no provision in the 1872 Mining Law ... requiring notice to the Federal government by a mining claimant of the location of his claim. The Mining Law only required compliance with local recording requirements, which usually means simply an entry in the general county land records. Conse-

purposes; as long as $100 of assessment work is performed annually, the individual may continue to extract and sell minerals from the claim without paying any royalty to the United States. For a nominal sum, and after certain statutory conditions are fulfilled, an individual may patent the claim, thereby purchasing from the Federal Government the land and minerals and obtaining ultimate title to them. Patenting, however, is not required, and an unpatented mining claim remains a fully recognized possessory interest.
*Id.* at 86, 105 S.Ct. at 1788 (internal statutory citations omitted).

5. FLPMA § 314 provides:

(a) Filing requirements
    The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection....
    (1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit or as-

sessment work performed thereon, on a detailed report provided by section 28–1 of Title 30, relating thereto.
    (2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.
(b) Additional filing requirements
    The owner of an unpatented lode or placer mining claim shall, within the three-year period following October 21, 1976, file in the office of the Bureau designated by the Secretary a copy of the official record of the notice of location or certificate of location, including a description of the location of the mining claim or mill or tunnel site sufficient to locate the claimed lands on the ground....
(c) Failure to file as constituting abandonment; defective or untimely filing
    The failure to file such instruments as required by subsections (a) and (b) of this section shall be deemed conclusively to constitute an abandonment of the mining claim or mill or tunnel site by the owner....

6. *See, e.g., Philip Sayer,* 42 IBLA 296 (1979); *Cleo May Fresh,* 50 IBLA 363 (1980); *United States v. Haskins,* 59 IBLA 1 (1981).

quently, Federal land managers do not have an easy way of discovering which Federal lands are subject to either valid or invalid mining claim locations.... Th[e large number of] claims constitute a cloud on the title of a large portion of the Federal lands.

Subsection (a) would establish the recording system so necessary for Federal land planners and managers. It would require that all mining claims under the 1872 Mining Law, as amended, be recorded by the claimants with the Secretary.... Any claim not recorded is to be conclusively presumed abandoned and will be void.... [The] purpose [of the recording requirement] is to advise the Federal land managing agency, as proprietor, of the existence of mining claims.

S.Rep. No. 94–583, 94th Cong., 2d Sess. at 64–65 (1975) (emphasis omitted) (quoted in *Western Mining Council v. Watt*, 643 F.2d 618, 629 (9th Cir.1981).[7]

The purpose of 30 U.S.C. § 38 is not contradictory, as Webb contends. First, although that statute was designed to eliminate the necessity of proving compliance with formal location requirements,[8] there was no barrier to congressional alteration of that purpose in FLPMA. Second, Webb's argument that a claimant under § 38 cannot comply with the filing requirements because there is no document to be filed is specious. The BLM has consistently interpreted § 314 to apply to claims made pursuant to 30 U.S.C. § 38. Such consistent agency interpretation is entitled to substantial deference. *See Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965); *Red Top Mercury Mines*, 887 F.2d at 206.

In light of the language, history, and purpose of FLPMA, and BLM's consistent interpretation of § 314, this court is unwilling to conclude that the agency's construction of § 314 is impermissible. "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question had initially arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11.

**B. Compliance with Filing Requirements**

█ We review an administrative determination that a claimant has failed to comply with the statutory filing requirements under the substantial evidence standard. *Containerfreight Corp. v. United States*, 752 F.2d 419, 422 (9th Cir.1985). While we conduct a careful review, we must affirm if "there is such relevant evidence as reasonable minds might accept as adequate to support a conclusion...." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987).

█ We conclude that the IBLA's decision that Webb failed to comply with the statutory recording requirements meets this standard. Webb submitted lode location notices for the eleven disputed claims, not placer notices. A lode discovery cannot support a placer discovery. *Cole v. Ralph*, 252 U.S. 286, 295, 40 S.Ct. 321, 325–26, 64 L.Ed. 567 (1920). Filing a lode location notice likewise does not accomplish FLPMA's information-gathering goal because being separate legal entities, both types of claims can exist on the same piece of ground at the same time. *See United States v. Haskins*, 505 F.2d at 295; *Paul Vaillant*, 90 IBLA 249, 252 (1986).[9]

---

**7.** Webb makes much of the fact that the legislative history refers to claims "under the 1872 Mining Law," arguing that his claims cannot be so classified and thus are exempt from the requirement. Aside from the fact that the language of FLPMA does not support his theory, the General Mining Law of 1872 modified and incorporated the Placer Act, upon which Webb relies. See Act of March 3, 1891, ch. 561, § 4, 26 Stat. 1097, *codified at* 30 U.S.C. § 35 (establishing requirements for valid entry and subject-

ing placer claims to same entry and patent requirements as apply to lode claims).

**8.** *See United States v. Haskins*, 505 F.2d 246, 250 (9th Cir.1974).

**9.** Because there is no evidence that the BLM affirmatively misled Webb into believing that lode notices would suffice to comply with the statutory requirements as to his placer claims, there is no estoppel against the government

Nor is Webb's argument that he could not comply with the § 314 requirements because no official notice of his placer claims was available persuasive. That requirement was met in this case. At the time this litigation was commenced, the BLM allowed a § 38 claimant to comply with § 314 by filing certain "essential information ... where a claimant cannot show proof that a notice of location was recorded." Such information was permitted to be in the form of "other evidence, acceptable to the proper BLM office, of such instrument of recordation." *See* 43 CFR § 3833.0–5(i), *as amended*, 44 Fed. Reg. 9720 (1979); *Philip Sayer*, 42 IBLA 296, 302 (1979). This other evidence was to include:

> (1) the name under which the claim is presently identified ...; (2) the name and address of the present claimants; (3) an adequate description of the claim; (4) type of claim; (5) information concerning the time of the state's statute of limitations and a statement by the claimant as to how long the claim has been held and worked ... and (6) any other information the claimant would have showing the chain of title to him and bearing upon the possession and occupancy of the claim for mining purposes.

*Sayer*, 42 IBLA at 302–03.

Webb did not comply with these requirements. Specifically, he failed to file any document sufficient to identify the type of claim he was asserting with any degree of particularity. Instead, he filed only documents which cited the statutory provisions for lode and placer claims and referred to lode location notices filed with the Maricopa County Recorder. Webb also paid filing fees sufficient in 1979 to cover only his lode claims. The BLM's decision was supported by substantial evidence.

---

based on its knowledge that granite quarries are ordinarily placer claims. *See Locke,* 471 U.S. at 90 n. 7, 105 S.Ct. at 1790; *Id.* at 110–12, 105 S.Ct. at 1800–02 (O'Connor, J., concurring); *Heckler v. Community Health Services,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984).

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

---

Webb's argument that the lode claims should be considered placer claims because the BLM had previously ruled his lode claims invalid also cannot be accepted. Litigation challenging that determination continued until 1984 and Webb was obligated to record the lode locations in 1979 to maintain the challenge.