Gary **HOEFLER**, Don Wurster, Cameron Anderson and Robin Anderson, Owners of the Placer Wilson Mining Claim, Plaintiffs,

v.

Bruce **BABBITT**, Secretary of the Interior, Michael Dombeck, Acting Director, Bureau of Land Management, Elaine Zielinski, State Director, Oregon Office, Bureau of Land Management, United States Department of the Interior, Dan Glickman, Secretary of Agriculture, Jack Ward Thomas, Chief, Forest Service, Robert W. Williams, Acting Regional Forester, Mike Lunn, Forest Supervisor, Siskiyou National Forest, Mary Zuschlag, District Manager, Defendants.

**Civil No. 93–1427–FR.**

United States District Court,
D. Oregon.

Oct. 7, 1996.

Roger F. Dierking, Philip F. Schuster, Dierking & Schuster, Portland, OR, for Plaintiffs.

Kristine Olson, United States Attorney, Thomas C. Lee, Assistant United States Attorney, Portland, OR, for Defendants.

## OPINION

FRYE, District Judge:

This action arises from a decision of the Interior Board of Land Appeals (the IBLA) declaring the Wilson placer mining claim of the plaintiffs null and void *ab initio*. The plaintiffs seek review of this decision. Before the court is the motion of the defendants to dismiss (# 36–1) and/or for summary judgment (# 36–2). The defendants move the court to dismiss the plaintiffs' first claim for quiet title for failure to state a claim; to dismiss the plaintiffs' third claim for an evi-dentiary hearing; and to deny the plaintiffs' fourth claim to reverse the decision of the IBLA because it is not supported by substantial evidence. The defendants also move for summary judgment against the plaintiffs' second claim in which the plaintiffs seek to have their mining claim recorded.

## UNDISPUTED FACTS

On January 13, 1913, Henry and John Brazille filed a Notice of Placer Location for the Navajoe Placer Mine which they located on December 17, 1912 for an area located near the Illinois River in Josephine County, Oregon.

On September 25, 1929, George C. Wilson filed a Notice of Location of Placer Claim, also for an area located near the Illinois River in Josephine County, Oregon.

On August 29, 1934, James Greig filed an Amended Notice of Location of Placer Claim in Josephine County. Other documents recorded in Josephine County trace the chain of title of the plaintiffs' Wilson placer mining claim back to the Amended Notice of Location of Placer Claim filed by Greig. The owners of the Wilson placer mining claim between Greig and the plaintiffs are O.A. and Margaret Thomas, A.S. Barnes, A. Donley Barnes, Rolland R. Woodford, Conrad Freeman, and Larry O. Farmer. Although no deed was recorded conveying the claim of George C. Wilson to Greig, the survey boundary calls of the two claims are similar. The defendants do not dispute that the Amended Notice of Location of Placer Claim filed by Greig on August 29, 1934 relates back and applies to the same area as the Notice of Location of Placer Claim filed by George C. Wilson on September 25, 1929. Therefore, the plaintiffs are able to trace the chain of title of their Wilson placer mining claim back to 1929.

There is no recorded deed for any conveyance of the Navajoe placer mining claim from the Brazilles to George C. Wilson. Thus, the dispute between the parties is whether the plaintiffs' Wilson placer mining claim is one and the same claim as the Brazilles' Navajoe placer mining claim. The plaintiffs want to establish this fact so that they are able to

trace the chain of title of their Wilson placer mining claim back to 1913.

According to A. Donley Barnes, who owned the Wilson placer mining claim from 1938 until 1967, the Navajoe placer mining claim and the Wilson placer mining claim are the same claim. Henry and John Brazille built a two-story house shortly after they recorded the Navejoe placer mining claim in 1913. Barnes lived in this house from 1938 until 1967 and used some of the improvements, including a woodshed, which Barnes believes was constructed by Henry and John Brazille, and a water source. According to Barnes, Henry and John Brazille owned the Navajoe placer mining claim from the time that they originally located the placer mine in 1912 to the time that they sold it to George C. Wilson in 1929. Barnes' memory of the sale from the Brazilles to George C. Wilson, however, was vague. John Brazille worked for Barnes and helped Barnes restore the corner monuments of the Wilson placer mining claim. Barnes stated that when he purchased the Wilson placer mining claim in 1938, he intended to acquire ownership of the buildings and of the filing relating back to the original claim located by Henry and John Brazille in 1912 and recorded in 1913. John Brazille told Barnes that title to the Wilson placer mining claim related back to the original claim located in 1912. Both Henry and John Brazille and George Wilson died before the IBLA issued its decision declaring the Wilson placer mining claim null and void *ab initio*.

The land in the area in which both the Wilson and Navajoe claims are found, whether those claims are the same or merely near each other, was withdrawn from mineral entry from January 7, 1926 until August 11, 1955 by Powersite Location No. 123. The Mining Claim Rights Restoration Act (the MCRRA), 30 U.S.C. § 623, provides that within one year after August 11, 1955, an owner of unpatented mining claims located on land withdrawn for powersite locations can file a copy of the Notice of Location of the mining claim. Barnes filed a copy of Greig's 1934 Amended Notice of Location of the Wilson placer mining claim on August 13, 1956. The Wilson placer mining claim was

withdrawn from location and entry under the mining laws when the Wild and Scenic Rivers Act was enacted on October 2, 1968 and remains withdrawn from location to the present.

On August 2, 1989, the Bureau of Land Management (the BLM) sent the plaintiffs a notice requesting additional evidence of their assertion of title to the Wilson placer mining claim. In June of 1990, the BLM determined that the plaintiffs had failed to provide proof that the Wilson placer mining claim was, in actuality, the Navajoe placer mining claim located on December 17, 1912 when the lands were open to mineral entry. The IBLA affirmed the decision. *Hoefler,* 27 IBLA 211 (1993).

## CONTENTIONS OF THE PARTIES

The plaintiffs contend that the Wilson placer mining claim is valid for three reasons: (1) the Wilson placer mining claim is the same claim as the Navajoe placer mining claim which was located when the land was open to mineral entry; (2) the filing by Barnes on August 13, 1956 of a copy of Greig's 1934 Amended Notice of Location of the Wilson placer mining claim under the MCRRA validated the claim; (3) the plaintiffs are entitled to the Wilson placer mining claim by adverse possession under 30 U.S.C. § 38 because for more than ten years—from 1955 to 1968, when the land was open to the public for mineral entry—they possessed it.

The plaintiffs contend that this court has jurisdiction under the Quiet Title Act, 28 U.S.C. § 2409a, to review material not contained in the administrative record; that the decision of the IBLA is not supported by substantial evidence; that they are entitled to an evidentiary hearing before the Secretary of the Interior; and that the doctrine of equitable estoppel acts to make valid the Wilson placer mining claim.

On the merits, the defendants contend that the record does not support the argument of the plaintiffs that the Wilson placer mining claim and the Navajoe placer mining claim are one and the same; that the filing by Barnes of a copy of the 1934 Amended Notice of Location of the Wilson placer mining claim on August 13, 1956 was filed two days

too late to afford the plaintiffs relief under the MCRRA; and that the plaintiffs cannot rely on the doctrine of adverse possession because they did not record a "holding and working" claim as required by Section 314 of the Federal Land Policy and Management Act, 43 U.S.C. § 1744.

Procedurally, the defendants contend that the proper standard of review is whether the decision of the IBLA was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

The defendants contend that the plaintiffs are not entitled to an evidentiary hearing because the plaintiffs have no property rights in the invalid Wilson placer mining claim, and there is no additional evidence to be presented. The defendants also contend that the remedies of the plaintiffs are confined to the remedies provided by the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* (the APA), and not the remedies provided by the Quiet Title Act, 28 U.S.C. § 2409a (the QTA).

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) will only be granted if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 737 (9th Cir.1987).

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the pro-

duction of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS AND RULING

1. *Quiet Title*

The initial question is whether the plaintiffs are limited to the remedies provided by the APA, or whether they may alternatively seek relief under the QTA.

The QTA allows a plaintiff to name the United States as a defendant in a civil action "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The defendants contend that the United States claims no interest in the Wilson placer mining claim. The defendants argue that because the Wilson placer mining claim is unpatented,[1] the United States has title to the land and therefore has the power to determine whether a claim such as the plaintiffs' is valid and, if not, to declare it null and void. The defendants characterize the issue as whether the property interest in the form of the mining claim even exists, and not as who owns the title to the property interest. The defendants further argue that a placer mining claim cannot be validated unless the Department of Interior determines that the claim incorporates the discovery of a valuable mineral. This has never been determined for the Wilson placer mining claim. Thus, this court should not quiet title in the Wilson placer mining claim.

The plaintiffs argue that the QTA applies to estates with less than a fee simple interest, including an unpatented mining claim. The plaintiffs concede, however, that the Forest Service has jurisdiction to initiate

1. An unpatented claim is a possessory interest in land solely for the purpose of mining. The government or a private party may contest an unpatented claim. The claimant gets a fee simple interest from the United States in a patented

claim, and no one can contest the claim. *Clouser v. Espy,* 42 F.3d 1522, 1525 n. 2 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995).

proceedings to determine if a valuable mineral exists in the unpatented mining claim.

The plaintiffs cite several cases in support of their contention that the United States can claim an interest in mining claims: in *Downstate Stone Co. v. United States,* 651 F.2d 1234 (7th Cir.1981), the plaintiff sued the United States under the QTA to enforce its right to quarry limestone pursuant to a reservation of mineral rights on land which it had sold to the United States; in *Amoco Prod. Co. v. United States,* 619 F.2d 1383 (10th Cir.1980), the plaintiff sued the United States to quiet title to a mineral interest reserved when the predecessor in interest to the United States conveyed the property. The cases cited by the plaintiffs revolve around mineral interests reserved when land is sold. None of these cases concern a mining claim or opposition to a decision of the IBLA as to the validity of a mining claim. The plaintiffs cite no case in which a plaintiff is allowed to use the QTA to challenge a decision of the IBLA to invalidate a mining claim.

As stated in *Clouser v. Espy,* 42 F.3d 1522, 1528 n. 5 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995):

> [T]he APA is a framework statute that provides the generally applicable means for obtaining judicial review of actions taken by federal agencies. Generally, except where a party challenges an agency action as violating a federal law—be it a statute, regulation, or constitutional provision— that has been interpreted as conferring a private right of action, or where a particular regulatory scheme contains a specialized provision for obtaining judicial review of agency actions under the scheme, review under a framework statute such as the APA is the sole means for testing the legality of federal agency action.

The plaintiffs do not fall within the exceptions noted by the court in *Clouser.* Consequently, the only remedy available to the plaintiffs is through the APA. The motion of the defendants to dismiss the first claim of the plaintiffs for quiet title is granted.

**2.  *Standard of Review by this Court of a Decision of the IBLA***

▮  The plaintiffs argue that the standard of review of a decision of the IBLA is whether the decision of the IBLA is supported by substantial evidence. The defendants argue that because the IBLA did not conduct an adjudicatory hearing, the standard of review of its decision is whether the decision is "arbitrary and capricious."

The APA contains the following standards of review:

> The reviewing court shall—
>
>     . . . .
>
>     (2)  hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>     (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>     . . . .
>
>     (E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [hearings] or otherwise reviewed on the record of an agency hearing provided by statute; or
>
>     . . . .

5 U.S.C. § 706.

The plaintiffs contend that their due process rights entitle them to an evidentiary hearing, although they do not cite any statute that requires that the validity of a mining claim be determined in an evidentiary hearing. If an informal hearing is held before the IBLA or required pursuant to a regulation but not pursuant to a statute, the appropriate standard is whether the decision of the IBLA is "arbitrary and capricious" under 5 U.S.C. § 706(2)(A). *Castillo v. Army & Air Force Exch. Serv.,* 849 F.2d 199, 203 n. 1 (5th Cir.1988) ("arbitrary and capricious" test used when hearing was pursuant to regulation and not statute). "Determinations by ... the IBLA must be upheld unless arbitrary, capricious, an abuse of discretion, or not in accordance with law." *Gilmore v. Lujan,* 947 F.2d 1409, 1411 (9th Cir.1991) (internal quotations omitted).

The standard of review here is whether the review of the decision of the BLM by the

IBLA was arbitrary, capricious, an abuse of discretion, or not in accordance with law. Accordingly, the plaintiffs' fourth claim to reverse the IBLA's decision because it is not supported by substantial evidence is dismissed for failure to state a claim.

### 3. Entitlement to an Evidentiary Hearing

The plaintiffs contend that their right to due process of law requires that an evidentiary hearing be held before the IBLA. The plaintiffs seek to present testimony relating to the ground monuments marking the Wilson placer mining claim and the transfer of ownership in the form of conveyances, as opposed to the Notices of Location. The plaintiffs argue that the only facts considered by the IBLA were those facts adduced from the Notice of Location instruments that were recorded. The plaintiffs argue that an on-site survey is required. The plaintiffs contend that the failure of the IBLA to use the procedure necessary to enable them to meaningfully determine the conduct of the Forest Service and of the BLM while investigating the on-site boundaries and monuments from the 1950s through 1965 is the essence of their due process concerns.

The defendants argue that the plaintiffs are not entitled to an evidentiary hearing because the plaintiffs have no property rights upon which to base a due process claim. Further, the defendants argue that the IBLA denied the request of the plaintiffs for an evidentiary hearing after reviewing the deposition testimony of Barnes. The IBLA noted that "the record that we have concerning these old placer claims is as complete as it is ever likely to be." *Hoefler,* 27 IBLA at 215.

■ When the BLM asked the plaintiffs for additional evidence of title, the plaintiffs provided the deposition testimony of Barnes. The plaintiffs do not explain why they could not have provided to the BLM the evidence that they wish to present now through documents and photographs, including the deposition testimony of others as well as the deposition testimony of Barnes. Detailed administrative procedures can be sufficient due process, particularly when there is no evidence that the plaintiffs are unable to comprehend the administrative

procedures and thus require an evidentiary hearing to assist them in presenting evidence. *Clouser,* 42 F.3d at 1540 ("As here there is no record evidence showing, nor reason to believe, that holders of mining claims are similarly unable to pursue their claims by filing written pleadings.") The court finds that the due process rights to which the plaintiffs are entitled do not. include the right to an evidentiary hearing before this court. The plaintiffs' third claim for an evidentiary hearing will be dismissed.

### 4. Mining Claim Validity

The defendants move for summary judgment against the plaintiffs' second claim in which the plaintiffs seek to have the Wilson mining claim recorded. The plaintiffs make four arguments in support of their claim. Again, the court will review the decision of the IBLA to determine whether it is a decision that is arbitrary, capricious, an abuse of discretion, or not in accordance with law.

#### a. Identity of Wilson and Navajoe Claims

■ An order withdrawing land from mining entry invalidates any mining location made while the order remains operative. *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 444 (9th Cir. 1971). The defendants concede that the plaintiffs' chain of title relates back to September 25, 1929, when George Wilson filed a Notice of Location of Placer Claim. The land in the area was withdrawn from mineral entry from January 7, 1926 until August 11, 1955. Thus, the plaintiffs must prove that the Wilson placer mining claim is the same claim as the Navajoe placer mining claim, which was located in 1912 and recorded in 1913 before the land within the claim was withdrawn from mining entry.

■ The plaintiffs argue that the George Wilson filing on September 25, 1929 and the Greig filing on August 29, 1934 operate as amended Notices of Location of Placer Claim. The plaintiffs argue that these two Notices of Location of Placer Claim were filed by George Wilson and Greig to show that they intended to and did convey their

interests to the grantees who filed the 1929 and 1934 Notices of Location of Placer Claim, notwithstanding the fact that the two deeds were not recorded. The plaintiffs also rely on the testimony of Barnes, who states that he intended to purchase the buildings and to make the filings necessary to relate back to the original claim that was located in 1912. Ex. 31 at 18. Barnes also stated that the Brazilles owned the claim "up to the time they sold it, and I suppose to Mr. Wilson." Ex. 31 at 16. Barnes lived in the house built by the Brazilles. Ex. 31 at 9.

The IBLA studied the documents and concluded that the documents do not connect the Navajoe and the Wilson claims. A comparison of the survey calls in the Notices of Location for the Navajoe and the Wilson claims shows that the Notice of Location for the Navajoe claim has an illegible word in the copy that is in the administrative record. Ex. 1. Because the other three calls are northerly, southerly and westerly, the illegible word must be "easterly" in order to form a closed rectangle for the claim. Comparing this to the 1929 and the 1934 Notices of Location for the Wilson claim, and assuming that stake one would be in the same location if the Navajoe and the Wilson claims were the same and the notices were amendments as the plaintiffs contend, the claims cannot be for the same land. They must be for contiguous land.

The IBLA reviewed the testimony of Barnes, but determined that the facts to which he testified were too vague to establish with reasonable certainty that the claims were for the same land. The IBLA also noted the existence of a Mineral Claims Occupancy Report dated May 20, 1965 (Ex. 2), which states that the claims may have an unbroken line of ownership dating from 1912 based on two unrecorded quitclaim deeds from Brazille to George Wilson and from George Wilson to Greig.

The administrative record contains a document entitled "Decision Notice, Wilson Placer Claim" dated April 16, 1980, which includes this statement: "My decision is based on the fact that this is a reasonable exercise of a miner's rights. The claim is valid." Ex. 26B. The Decision Notice references an En-vironmental Assessment Report which is not a part of the administrative record. The plaintiffs obtained the Environmental Assessment Report during the course of this litigation. The Environmental Assessment Report, dated April 14, 1980, and prepared by Greg R. Schimke, a minerals technician with the Forest Service, states, in part:

On April 2, 1980, I traced the history of the Wilson Placer claim in the Josephine County Recorder's office. The claim was originally filed on 12/17/12 and has had an unbroken chain of ownership to the present owners. Annual assessment work has been kept up since the withdrawal went into effect.

Appendice No. 4 to Plaintiffs' Response to Defendants' Reply Memorandum Regarding Defendants' Motion to Dismiss and for Summary Judgment, p. 3. Although the Environmental Assessment Report was referenced in the administrative record, it is not formally a part of the record and the IBLA never saw it.

Generally, review of agency action is limited to the administrative record. *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 997 (9th Cir.1993). However, this general rule is subject to several exceptions which permit this court to review evidence outside of the administrative record:

(1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record," or (3) "when supplementing the record is necessary to explain technical terms or complex subject matter."

A fourth circumstance occurs "when plaintiffs make a showing of agency bad faith."

*Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703–04 (9th Cir.1996) (quoting *Friends of the Payette*, 988 F.2d at 997; and *National Audubon Soc'y v. United States Forest Serv.*, 46 F.3d 1437, 1447 n. 9 (9th Cir.1993)). Recently, the United States Court of Appeals for the Ninth Circuit permitted extra-record evidence because the evidence assisted the court regarding highly technical matters. *Inland Empire Pub.*

*Lands Council v. United States Forest Serv.,* 88 F.3d 754, 760 n. 5 (9th Cir.1996) ("the court may consider, particularly in highly technical areas, substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration ... because it will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." (Internal quotations omitted)).

None of the exceptions apply here. The IBLA reviewed all of the relevant documents and other evidence, such as the Barnes deposition, and carefully explained why the evidence did not support a conclusion that the Navajoe placer mining claim and the Wilson placer mining claim were the same claim. There is no evidence that the IBLA considered any documents not in the administrative record. The subject matter here, documents establishing a chain of title, is not so highly technical that the record must be supplemented to either explain it or for this court to determine if the IBLA considered all relevant factors. Furthermore, the Environmental Assessment Report does not provide any further explanation of any technicalities. The court does not see evidence of bad faith on the part of the defendants. At most, they did not point out problems with the validity of the Wilson placer mining claim as early as the plaintiffs would have preferred. This does not amount to bad faith because there is no evidence that the defendants withheld information from the plaintiffs. At most, they did not gather it quickly enough.

■ The administrative record does contain the Mineral Claims Occupancy Report, discussed above, which states that the claim may have an unbroken line of ownership dating from 1912. This is essentially the same information as that contained in the Environmental Assessment Report. Thus, the Environmental Assessment Report does not address information not already in the record. *See Rybachek v. United States EPA,* 904 F.2d 1276, 1296 n. 25 (9th Cir.1990). The

court declines to supplement the administrative record with the Environmental Assessment Report.

The conclusion of the IBLA that the Navajoe placer mining claim and the Wilson placer mining claim are not the same claim is not arbitrary, capricious, an abuse of discretion, or not in accordance with law.

### b. *Adverse Possession*

■ An alternative way for a miner to establish a claim is by holding and working the claim for a period of time equal to that required under state law for the statute of limitations for adverse possession of mining claims. 30 U.S.C. § 38. In the State of Oregon, the period is ten years. O.R.S. 12.050.

The original 1872 Mining Law required compliance with local recording requirements, but did not require a notice of a mining claim to the federal government. To allow the federal land managers an easy way of discovering which federal lands are subject to mining claim locations, Congress passed the Federal Land Policy and Management Act § 314, 43 U.S.C. § 1744 (the FLPMA). It requires owners of unpatented mining claims located prior to October 21, 1976, to file certain instruments with the BLM within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter. Failure to file the instruments is deemed conclusively to constitute abandonment of the claim.

The IBLA has consistently held that the filing requirements of the FLPMA § 314 apply to all who submit holding and working claims under 30 U.S.C. § 38. *See Sayer,* 42 IBLA 296, 299–300 (1979); *Heady,* 110 IBLA 245, 247 (1989). The Ninth Circuit upheld the IBLA's construction of 30 U.S.C. § 38 as requiring all filings specified in FLPMA § 314 in *Webb v. Lujan,* 960 F.2d 89, 93 (9th Cir.1992). The information in the filings is to include at a minimum:

(1) the name under which the claim is presently identified and all other names by which it may have been known to the extent possible; (2) the name and address of the present claimants; (3) an adequate

description of the claim; (4) type of claim; (5) information concerning the time of the state's statute of limitations and a statement by the claimant as to how long the claim has been held and worked, giving, if possible, the date (or at least the year) of the origin of the claimant's title and facts as to continuation of possession of the claim; and (6) any other information the claimant would have showing the chain of title to him and bearing upon the possession and occupancy of the claim for mining purposes.

*Sayer,* 42 IBLA at 302–03; *Webb,* 960 F.2d at 94.

The plaintiffs cite *United States v. Haskins,* 505 F.2d 246, 250 (9th Cir.1974), for their statement that 30 U.S.C. § 38 allows miners to assert valid placer locations "without proof of posting, recording notices of location and the like." *Haskins* was decided before the passage of the FLPMA § 314, however, and thus does not discuss how the two laws should be construed together. It is not dispositive here.

In 1979, the predecessors in interest of the plaintiffs filed with the BLM a copy of the Amended Notice of Location of Placer Claim originally filed by Greig in 1934. This document, however, does not contain all of the information required by the FLPMA and described in *Webb.* As in *Webb,* the predecessors in interest of the plaintiffs failed to file a document sufficient to identify the type of claim with any degree of particularity and thus fulfill the goals of the FLPMA. Furthermore, no filings were made in successive years, as required by the FLPMA. The court concludes that the plaintiffs cannot validate the Wilson placer mining claim by the doctrine of adverse possession because of the failure to record a proper holding and working claim.

#### c. *Mining Claim Rights Restoration Act*

■ The Mining Claim Rights Restoration Act (the MCRRA) allows owners of unpatented mining claims located on land withdrawn from mineral entry for power purposes to file a copy of the notice of location of the claim within one year after August 11, 1955. 30 U.S.C. § 623. Courts have strictly construed filing requirements found in other federal mining laws. *See United States v. Locke,* 471 U.S. 84, 100–01, 105 S.Ct. 1785, 1795–96, 85 L.Ed.2d 64 (1985) (missing the annual filing required by the FLPMA by one day was untimely and resulted in abandonment of the mining claim).

Barnes filed a copy of Greig's 1934 Amended Notice of Location of the Wilson placer mining claim on August 13, 1956, two days after the deadline passed. This filing was untimely and cannot validate the claim. Thus, it is not necessary for the court to determine what rights the plaintiffs might have been afforded by the MCRRA. *See* S.Rep. No. 1150, 84th Cong., 1st Sess. (1955), *reprinted in* 1955 U.S.C.C.A.N. 3006, 3007 ("the language of [the MCCRA] as reported by the committee does not validate locations or claims based on entry after public lands have been withdrawn or reserved for power development and prior to restoration").

#### d. *Equitable Estoppel*

To estop the United States, the government's conduct supporting the estoppel must include affirmative misconduct, defined to be an affirmative misrepresentation or affirmative concealment of a material fact. *United States v. Ruby Co.,* 588 F.2d 697, 702–03 (9th Cir.1978) (Interior Department did not engage in affirmative misconduct when it decided not to resurvey land until 34 years after the BLM recommended a resurvey because the original survey appeared fraudulent), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). The misconduct must go beyond "mere negligence" and must amount to "ongoing active misrepresentations" or a "pervasive pattern of false promises." *Stone Forest Indus. v. Robertson,* 936 F.2d 1072, 1075 (9th Cir.1991).

■ The plaintiffs contend that the defendants had three opportunities to inform them of a problem with the validity of the Wilson placer mining claim: (1) after the filing by Barnes of Greig's 1934 Amended Notice of Location of the Wilson placer mining claim on August 13, 1956; (2) in 1965 when the Forest Service issued the Mining

**1458**

Claim Occupancy Report; and (3) in 1980 when the Forest Service approved a plan of operations. The plaintiffs contend that the defendants should have investigated and made a final validity determination at those times when they gave some attention to the Wilson placer mining claim. The court concludes that the failure to inform the plaintiffs of the validity problems at an earlier date does not amount to ongoing active misrepresentations. There is no evidence that the defendants had information that they were withholding from the plaintiffs. Accordingly, the court concludes that the defendants are not estopped from declaring the Wilson placer mining claim null and void *ab initio*.

· e. *Summary on Mining Claim Validity*

For the reasons above, none of the arguments of the plaintiffs that the Wilson placer mining claim is valid have merit. Accordingly, the court affirms the decision of the IBLA declaring the Wilson placer mining claim null and void *ab initio*.

**CONCLUSION**

The motion of the defendants to dismiss claim one for quiet title, claim three for an evidentiary hearing, and claim four to reverse the decision of the IBLA because it is not supported by substantial evidence (# 36–1) is granted. The motion of the defendants for summary judgment against the plaintiffs' amended complaint, including claim two in which the plaintiffs seek to have their mining claim recorded, (# 36–2) is granted. This disposes of all of the claims of the plaintiffs. The court will enter a judgment.