Rex HUNTLEY; Matthew Huntley; Gregory Gintoff, individually and as a general partnership, Plaintiffs—Appellants,

v.

NEWMONT MINING CORP.; Newmont Gold Company; Newmont Exploration, Newmont Exploration Ltd., Defendants—Appellees.

Nos. 00–17420, 01–15061.
D.C. No. CV–96–00369–HDM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2002.

Decided June 7, 2002.

---

Before REINHARDT, MAGILL,* and FISHER, Circuit Judges.

## MEMORANDUM **

Rex Huntley, Matthew Huntley, and Gregory Gintoff, individually and as a general partnership (collectively "Huntley"), appeal the district court's grant of final judgment in favor of Newmont Mining Corp., Newmont Gold Co., and Newmont Exploration Ltd. (collectively "Newmont"). Specifically, Huntley appeals the district

court's decision that seven mining claims in the Carlin, Nevada area (collectively the "Bull Moose Claims") were void under the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701 *et seq.* (1994), because the owner of the claims did not file a notice or affidavit of assessment with the county office for calendar year 1984 as required by subsection (1) of § 1744(a). Because resolution of this issue is dispositive, we need not reach the other issues raised by the parties on appeal.

### I.

Between 1953 and 1963, William and Beverly Bleazard (the "Bleazards") located and staked seven claims on federal public lands situated in Eureka County, Nevada, i.e., the Bull Moose Claims. On February 20, 1989, the Bleazards entered into a mining lease with Huntley (the "Bleazard Lease"), whereby Huntley obtained the rights to explore, develop, and mine the Bull Moose Claims. In April 1989, Jim Stinson, a landman for Newmont, informed Rex Huntley that Newmont was interested in acquiring Huntley's rights in the Bull Moose Claims. Following several communications between Stinson and Huntley, in January 1990, Rex Huntley and Stinson met and discussed the terms of a deal involving the transfer of rights under the Bleazard Lease.

Negotiations between the parties continued until mid-August 1990, when Stinson and Rex Huntley entered into a verbal agreement. According to the agreement, Newmont would conduct drilling on the property, assay the samples obtained from the drilling, and share all pertinent infor-

---

* Honorable Frank Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

mation concerning the property in exchange for Huntley providing Newmont with access to both the property and the confidential data obtained from the exploration. Huntley also granted Newmont the right of first refusal to its rights in the Bull Moose Claims. The agreement was memorialized in a letter dated August 17, 1990.

On August 20, 1990, under the direction of Gregory Gintoff, Newmont drilled two holes on the subject property. By letter dated September 26, 1990, Newmont informed Huntley of the results of the drilling, which showed only trace amounts of gold. Following this discovery, Stinson informed Huntley that Newmont no longer had an interest in pursuing the negotiations with Huntley for the acquisition of the Bull Moose Claims. Because of this representation, on November 4, 1991, Huntley surrendered its rights under the Bleazard Lease. Thereafter, Newmont acquired the Bull Moose Claims directly from the Bleazards and filed a notice of abandonment and relinquishment of the Bull Moose Claims effective September 1, 1992. Newmont then abandoned the Bull Moose Claims in favor of other claims it held covering the same property because it determined that the Bull Moose Claims were void *ab initio*, or at least void as of December 31, 1984.

In July 1995, Huntley learned from media reports that Newmont had purportedly discovered a sizeable gold deposit in the immediate area of the Bull Moose Claims. Thereafter, Huntley contends that it learned for the first time that Newmont's exploratory drilling and assay reports were unreliable and improperly prepared. In June 1996, Huntley filed this suit against Newmont alleging fraudulent concealment, constructive fraud, breach of fiduciary duty, breach of contract, interference with contractual relations and prospective economic advantage, negligence, and unjust enrichment. Huntley also requested an accounting.

On November 19, 1998, Newmont filed a motion for summary judgment, raising various grounds for dismissal, including that the Bull Moose Claims were void long before Huntley acquired any leasehold interest in the claims because the Bleazards had failed to comply with the filing requirements of the FLPMA. In an order dated November 4, 1999, the district court agreed with Newmont that the Bull Moose Claims were void as of December 31, 1984, but nevertheless concluded that such a finding did not preclude Huntley from asserting a claim against Newmont.

On February 20, 2000, three days prior to the scheduled start of trial, the district court denied Huntley's motion for reconsideration of its ruling that the Bull Moose Claims were void. Huntley then requested that the district court certify for interlocutory appeal its holding that the Bull Moose Claims were void and vacate the trial. The district court certified its order under 28 U.S.C. § 1292(b) and Huntley petitioned this court for an interlocutory appeal, which was denied as untimely. On November 3, 2000, the parties agreed to a stipulated judgment against Huntley and in favor of Newmont. On November 7, 2000, the district court entered a final judgment. Both parties appeal.

## II.

█ Section 1744 of the FLPMA requires a claimant to file a notice of intent to hold claims or an affidavit of assessment work with both the Bureau of Land Management ("BLM") and the county in which the claims are located "prior to December 31 of each year" beginning in 1979 for

claims staked prior to October 21, 1976.[1] 43 U.S.C. § 1744(a). Beginning in 1979, and continuing through 1991, the Bleazards made the required BLM filings at some point in time during each calendar year. Further, with the exception of 1984, the Bleazards also made an appropriate filing with the Eureka County Recorder's Office at some point in time during each calendar year. In 1984, however, the Bleazards submitted their county filing on October 3, 1983—well within Nevada's 1984 *assessment* year (September 1—September 1), *see* Nev.Rev.Stat. § 517.230.4 (1971), but not within the 1984 *calendar* year. Huntley argues that the Bleazards' October 1983 filing satisfies the FLPMA annual county filing requirement for 1984. The district court disagreed, however, and concluded that § 1744 contemplates *calendar* year filings, and because the Bleazards did not make a county filing at any time during *calendar* year 1984, the Bull Moose Claims were automatically abandoned as of December 31, 1984.[2] The primary question presented by this appeal is whether a county filing, filed three months prior to the start of the calendar year, but within the state's assessment year, satisfies sub-section (1) of § 1744(a)'s annual filing requirement.

In *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), the Supreme Court held that a filing submitted on December 31 was untimely because the phrase "prior to" in § 1744(a) means "before." Following *Locke*'s guidance, in *Red Top Mercury Mines, Inc. v. United States,* 887 F.2d 198, 205 (9th Cir.1989), we held that a BLM filing in December 1980 did not satisfy filing requirements for both 1980 and 1981 because the use of the word "each" to modify "year" meant that one filing could not count for two years. Newmont contends that *Locke* and *Red Top* unambiguously establish a "calendar year" rule. We disagree. Neither *Locke* nor *Red Top* necessarily rules out the possibility that early filings are timely. Nevertheless, we find that Department of Interior regulations, which clearly contemplate *calendar* year filings for all of § 1744(a), i.e., BLM and county filings, are reasonable. *See* 43 C.F.R. § 3833.0–5(n) ("For the purpose of complying with the requirements of section 314(a) of the Act, the *calendar year* in which the assessment year ends is the year for which the evidence of annual assessment shall be filed.") (emphasis add-

---

1. Specifically, the filing requirements of the FLPMA state, in pertinent part:

   (a) Filing requirements. The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and *prior to December 31 of each year* thereafter, file the instruments required by paragraphs (1) and (2) of this subsection. . . .

   (1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit of assessment work performed thereon, . . . .

   (2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground. 43 U.S.C. § 1744 (emphasis added).

2. There is no dispute that failure to file the appropriate filings constitutes an abandonment. *See* 43 U.S.C. § 1744(c) ("The failure to file such instruments as required by subsections (a) and (b) of this section *shall be deemed conclusively to constitute an abandonment* of the mining claim or mill[.]") (emphasis added); *see also United States v. Locke,* 471 U.S. 84, 100, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ("the failure to file on time, in and of itself, causes a claim to be lost").

ed). *See also Webb v. Lujan,* 960 F.2d 89, 92 (9th Cir.1992) ("We must uphold an agency's construction of a statute ... if it is reasonable."); *James v. Joyce,* 56 IBLA 327 (1981) (holding that § 1744(a) requires filings be submitted each *calendar* year).

Huntley asks us to find that § 1744(a) requires BLM filings be made each calendar year and county filings to be made on a different schedule, i.e., an assessment year. As the district court correctly noted, however, "[t]he BLM and county filing requirements imposed by § 1744 are contained in subsection (1) and (2)," and "[t]here is no distinguishing language that would indicate that the two sections should be treated differently." To adopt Huntley's argument would require that § 1744(a)'s filing requirement be read inconsistently as applied to subsections (1) and (2). Such an inconsistent interpretation of § 1744(a) is unreasonable.

▪ Huntley also argues that the district court's decision was in error because the BLM had previously found that the Bleazards' Bull Moose Claims' filings were timely. To support its position, Huntley relies on a BLM letter issued in 1988 concerning the Bull Moose Claims, which concluded that "Proofs of Labor/Notices of Intent to Hold have been timely filed through 1986." It is unclear from this letter, however, whether this conclusion was based on BLM filings, county filings, or both. The letter is therefore ambiguous and lacks probative value. Moreover, even if the BLM letter were not ambiguous, informal agency letters, which are not the result of any adjudication or rulemaking, are not entitled to deference. *Scales v. INS,* 232 F.3d 1159, 1166 (9th Cir.2000).

Finally, Huntley contends that the district court's decision is "unprecedented" because it works such an unfair and unreasonable result. While we agree that the outcome is harsh, this court lacks the power to soften the outcome. *See Locke,* 471 U.S. at 95, 105 S.Ct. 1785 ("the Judiciary [is not] licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result"). Moreover, as the Supreme Court noted in *Locke,* merely requiring a claimant to file a paper once a year imposes the "most minimal of burdens." *Id.* at 106, 105 S.Ct. 1785. Certainly the Bleazards could have filed a carbon copy of their assessment with the county office during calendar year 1984 with only a minimal amount of effort. Because the Bleazards failed to do so, we affirm the order of the district court holding that the Bull Moose Claims were void as of December 31, 1984. Huntley's outstanding motions are denied as moot.

AFFIRMED.